LOCAL NO. 441, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 74–1259.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 25, 1975.

Decided April 4, 1975.

---

George A. Pappy, Los Angeles, Cal., for petitioner. Eugene Miller was on the brief for petitioner.

William Wachter, Washington, D. C., of the bar of the Supreme Judicial Court of Massachusetts, pro hac vice by special leave of court, with whom John S. Irv-

ing, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., were on the brief for respondent. John D. Burgoyne, Atty., N. L. R. B., also entered an appearance for respondent.

Before LEVENTHAL and ROBINSON, Circuit Judges, and MILLER,* Judge, United States Court of Customs and Patent Appeals.

Opinion for the Court filed by Circuit Judge LEVENTHAL.

LEVENTHAL, Circuit Judge:

The issue presented in this case is whether the union violated § 8(b)(4)(B) of the National Labor Relations Act, 29 U.S.C. § 158(b)(4)(B) (1970), by picketing for the proscribed objective of forcing a neutral general contractor to cease doing business with the subcontractor with whom the union had a labor dispute.

Carter, the neutral or secondary employer, was engaged in the construction of an inn in Orange, California. Carter contracted with Rollins Communication Inc. (Rollins) to install communications equipment at the inn. Addington, an IBEW representative, had Rollins picketed at the common job site because Rollins was not paying its employees the prevailing area wages and benefits. The picketing complied with the standards of presumptive validity set forth in the Board's decision in Sailors' Union of the Pacific (Moore Dry Dock Co.), 92 N.L. R.B. 547 (1950).

The crucial incident upon which the Board relied for its finding of an unfair labor practice was a conversation between Carter and Addington which took place after the picketing of Rollins had commenced. Conflicting accounts of the conversation were presented in testimony before the Administrative Law Judge (ALJ). Carter testified that he asked Addington what he could do to get the job at the inn going. He stated that Addington replied that the pickets would be removed if Carter would give him a

---

* Sitting by designation pursuant to 28 U.S.C. § 293(a).

letter assuring that Rollins' men would not go back to work until they received prevailing wages and benefits. (App. 66). Addington testified that Carter approached him and inquired whether he would take down the pickets if Carter had Rollins' workers removed from the job. Addington then asked for a letter to that effect. (App. 67). The ALJ credited Addington's account, concluding that "Carter rather than Addington" was "the first to mention getting Rollins' employees off the job as the *quid pro quo* for removal of the picket line." (App. 67).[1]

The ALJ found no unfair labor practice. His decision was based in part on his reading of the Board's decision in Sheet Metal Workers Int'l Ass'n (Quality Roofing Co.), 169 N.L.R.B. 1014 (1968), and the predicament facing a union agent where, "as here, [the general contractor] asks if removal of the primary employer will make [the picket line] go away." (App. 68).

The Board reversed the ALJ's decision. It adopted Carter's version of his crucial conversation with Addington. After surveying "the entire course of conduct engaged in by the Respondent," the Board concluded that the union "would not have been satisfied with anything less than the removal of Rollins from the jobsite, and that this unlawful object, as well as the lawful object of maintaining area standards, was reflected in the picketing." (App. 83).

We have concluded that the record in this case must be remanded to the Board for clarification for the following reasons:

■ 1. The Board's recital of the facts reflects Carter's version of the conversation with Addington even though the ALJ had accepted Addington's account. In so far as there is a direct conflict in testimony between witnesses, a normal trier of fact can have recourse to demeanor evidence. Here it was the ALJ who observed the demeanor of the witnesses, and he credited Addington, not Carter. Assuming, for discussion, that the Board intended to differ with the ALJ—which it may do, for example, on a determination that Carter's version was more in accord with its assessment of the probabilities of the situation—it was incumbent upon the Board first to identify expressly an awareness that it was disagreeing with the ALJ, especially on a point where he had credited one witness over another, and second, to set forth the basis of disagreement with the ALJ[2] so that we may determine whether the Board's finding is supported by substantial evidence in the record as a whole. *See* Universal Camera Corp. v. NLRB, 340 U.S. 474, 493–97, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

■ 2. Board counsel in his brief says that the same result would have been reached by the Board even assuming that Addington's version of events was correct. (Brief at 10 n. 7). But we do not know whether this would have been the view of the Board. As the Supreme Court recently noted, problems concerning the classification of disputed conduct as "primary" or "secondary" are "among the labor law's most intricate." NLRB v. Local 825, International Union of Operating Engineers, 400 U.S. 297,

---

1. The ALJ relied at least in part on Carter's statement on cross-examination that "I do not recall at any time that he [Addington] told me that he wanted them [Rollins' employees] off of the job, but at all times that he wanted them to be paid the prevailing wages and benefits and until that was done, he wasn't satisfied" in resolving the conflict in the testimony. (App. 67).

2. *See* Greater Boston Television Corp. v. FCC, 143 U.S.App.D.C. 383, 395, 444 F.2d 841, 853 (1970), cert. denied, 403 U.S. 923, 91 S.Ct.

2233, 29 L.Ed.2d 701 (1971) (The agency must make "clear not only its awareness of what the Examiner had concluded, but also its reasons for taking a different course."); Retail Store Employees Union, Local 400 v. NLRB, 123 U.S.App.D.C. 360, 362, 360 F.2d 494, 496 (1965) ( "[T]he place accorded to findings of a trial examiner in Universal Camera Corp. v. NLRB [340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456] requires the Board . . . to state more clearly the basis for its disagreement [with the trial examiner], not merely that it disagrees." ).

303, 91 S.Ct. 402, 407, 27 L.Ed.2d 398 (1971). In view of the "fine distinctions" involved, the Board's decision may have turned on its understanding that the *union* first raised the possibility that Rollins should be terminated as a subcontractor. *See* Sheet Metal Workers Int'l Ass'n (Quality Roofing Co.), 169 NLRB 1014, 1015 (1968) (relying in part on the fact that the union "did not request any neutral contractor to cease doing business with [the primary employer] . . [or] make an effort to initiate contact with these contractors); *cf.* International Bhd. of Elec. Workers (L.G. Electric Contractors, Inc.), 154 NLRB 766 (1965) (union representative initiated idea that primary employer be removed by the general contractor).

3. If the Board concludes that it is willing to accept the ALJ's version of the facts and still enter an order against the union, it should clarify the basis of its ruling. The court needs to know whether it is the Board's position that, if a union has a dispute with a primary employer, the union (a) may not have any conversation with a neutral employer, or (b) may have a conversation with a neutral employer but must not refer to the possibility of termination of the primary employer even when that subject is initiated by the neutral employer, or (c) may answer the question raised by the neutral employer by indicating that the picketing would stop if either the primary employer is terminated or pays the prevailing wage, but may not go further and inform the neutral employer that the picketing will cease if he takes the affirmative action of providing written assurance that the primary employer would not be allowed to return to the jobsite unless it pays prevailing wages and benefits. The Board's brief in this court argues that it was the union's request for a letter that was determinative in the present case, but it is not clear that this is the Board's analysis.

It is only in the light of clarification of these matters, and such other clarification of the basis of its decision that the Board may wish to furnish, that the court can discharge its function of determining whether the Board's order is supported by substantial evidence and is in accordance with law.

So ordered.