Martin H. NORMILE, Plaintiff-Appellant,

v.

Warren McFAGUE, et al.,
Defendants-Appellees.

No. 81–1908.

United States Court of Appeals,
First Circuit.

Argued June 7, 1982.
Decided Aug. 6, 1982.

William J. Lafferty, Boston, Mass., for appellant.

**10**

Frederick Geilfuss, Atty., Appellate Staff, Civ. Div., Dept. of Justice, Washington, D. C., with whom Edward F. Harrington, U. S. Atty., J. Paul McGrath, Asst. Atty. Gen., and William Kanter, Atty., Appellate Staff, Civ. Div., Dept. of Justice, Washington, D. C., were on brief, for appellees.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, and PETTINE,* District Judge.

BOWNES, Circuit Judge.

 Plaintiff-appellant Martin Normile appeals a decision of the district court upholding a decision of the Merit Systems Protection Board (MSPB) removing him from employment with the Department of Health, Education and Welfare (HEW). After unsuccessfully challenging his discharge on a variety of grounds before the MSPB and the district court, Normile raises before us only his claim that his discharge violated a Civil Service regulation because the HEW official who decided to discharge him also proposed his discharge.[1] Because appellant has not argued on appeal that the decision to discharge him was unconstitutional, arbitrary or capricious, we focus on whether there is substantial evidence in the record to support the MSPB decision and whether the MSPB reached that decision via lawful procedures. *See Doe v. Hampton,* 566 F.2d 265, 271–72 (D.C.Cir.1977); *Alsbury v. United States Postal Service,* 530 F.2d 852, 854 (9th Cir.), *cert. denied,* 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976).[2] The resolution of these questions involves two legal issues: whether the credibility findings of the subordinate officer who held the hearing could be reversed by his chief; and, if so, whether the agency decision was fatally defective because it did not state that there had been such a reversal and the reasons for it.

Normile was a GS–5 nonprobationary supply clerk with HEW's Regional Administrative Support Center. His duties included processing requests and making arrangements for the use of government or rental vehicles by HEW employees, operating a centralized audio-visual equipment pool, monitoring typewriter maintenance by government contractors, and keeping records of such transactions on various standardized forms. On July 13, 1978, Fred Hinkley, Director of Administrative Services and Normile's supervisor, initiated the dismissal proceedings by notifying him of eight charges containing some fifty specifi-

---

* Of the District of Rhode Island, sitting by designation.

1. 5 C.F.R. § 752.202(f) (1978) provides in pertinent part:

 *Notice of adverse decision.* The employee is entitled to notice of the agency's decision at the earliest practicable date. The decision shall be made by a higher level official of the agency, when there is one, than the official who proposed the adverse action.

2. An appeal from an agency decision to discharge an employee is an action involving "the selection or tenure of an employee," committed to supervisory discretion and specifically exempted from the coverage of section 554 of the Administrative Procedure Act, 5 U.S.C. § 554(a)(2); *King v. Hampton,* 327 F.Supp. 714, 716 (E.D.Mo.), *aff'd,* 451 F.2d 247, 250 (8th Cir. 1971). In conducting its review of appellant's removal by HEW, therefore, the MSPB was not bound by the procedural requirements set forth in the Act. *See* 5 U.S.C. §§ 554—557.

 As the district court correctly pointed out, what was formerly 5 U.S.C. § 7701, and the regulations promulgated thereunder, govern the actions of the MSPB in this case. Under the Civil Service Reform Act of 1978, Pub.L.No. 95–454, 92 Stat. 1111, the functions of the Federal Employee Appeals Authority (FEAA), the predecessor of the MSPB, were transferred to the MSPB.

 5 U.S.C. § 7703, not in effect at the time this case arose, provides that, except for cases of discrimination, appeals shall be taken to the Court of Claims or a United States court of appeals, § 7703(b)(1), and codifies the standard of review:

 (c) In any case filed in the United States Court of Claims or a United States Court of Appeals, the court shall review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be—

 (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

 (2) obtained without procedures required by law, rule, or regulation having been followed; or

 (3) unsupported by substantial evidence[.]

 5 U.S.C. § 7703(c).

cations of allegedly unsatisfactory performance.[3] On October 27, 1978, Warren McFague, Director of the HEW Regional Administrative Support Center and Hinkley's superior, sustained all of the charges and specifications and decided that Normile should be discharged effective December 19, 1978.

Normile appealed McFague's decision to the MSPB, raising a number of procedural issues as well as contesting the sufficiency of the evidence. Of particular relevance was Normile's assertion that McFague, the discharging official, had also been the one who proposed his dismissal. This dual participation, Normile alleged, violated agency regulations requiring that a discharge decision "be made by a higher level official of the agency, when there is one, than the official who proposed the adverse action." 5 C.F.R. § 752.202(f) (1978).

Jonathan Spack, an assistant appeals officer (AAO), conducted a *de novo* evidentiary hearing for the MSPB on February 5, 1979. After the hearing, the MSPB issued a decision signed by Spack and Harry Grossman, Chief Appeals Officer (CAO), which sustained six of the eight charges and thirty-nine of the fifty specifications, and found that the record supported discharge. With regard to the contention that the deciding official (McFague) also proposed discharge, the MSPB opinion acknowledged that the testimony was somewhat in conflict. The MSPB nevertheless concluded that there had been no procedural error, finding that Hinkley, not McFague, was the official who proposed the adverse action, and that McFague, a "higher level official," made the decision to discharge Normile. In so finding, the MSPB basically credited Hinkley's testimony over McFague's as to the precise nature of the discussions that had transpired between them relative to Normile's discharge.

The district court, after conducting an evidentiary hearing, upheld the vast majority of the charges and specifications as supported by the record. The court rejected Normile's procedural claim, concluding that the record adequately supported the MSPB's ruling that the discharge decision was made by a higher level official than the one who proposed the action.

Sometime after filing his complaint in district court, Normile's counsel learned through a chance meeting with Spack that Spack, based on credibility determinations, had originally decided the case in Normile's favor on the ground that McFague, not Hinkley, was the one who proposed discharge but that Grossman had reversed Spack's credibility findings and ordered him to rewrite the decision so as to affirm the discharge. Normile's attorney then filed a motion with the district court for reconsideration, together with an affidavit setting forth Spack's averments.

On the basis of the affidavit, the district court conducted an evidentiary hearing to inquire into the allegations that Grossman had ordered Spack to reverse his credibility findings relative to the procedural issue, even though Grossman had not heard the live testimony or observed the witnesses. After considering Normile's evidence, which consisted solely of Spack's testimony at the hearing and the affidavit, the district court denied the motion for reconsideration and entered summary judgment for appellees. In a carefully reasoned opinion, the district court ruled that Grossman had the authority to reverse Spack's findings on issues of credibility, and that, assuming the evidence of Spack's initial decision to be properly part of the administrative record, the MSPB's finding of no procedural error was reasonable and supported by substantial evidence in the record as a whole. We agree.

In analyzing the problem, we keep in mind that, although the MSPB decision was signed by both Spack and Grossman, it was Grossman, as chief appeals officer, who was

---

**3.** The charges alleged, *inter alia*, appellant's failure to comply with instructions for processing requests for the use of government-owned or rental vehicles, failure to prepare required reports on the use of such vehicles, failure to comply with instructions regarding typewriter maintenance, failure to follow instructions regarding loans of audio-visual equipment, and failure to maintain complete and adequate records.

responsible for it. Spack had no authority to issue a decision; this is not the case of an agency board reviewing a written decision by a hearing officer.

We start our review with the pertinent regulations. The applicable Civil Service Commission delegated authority to adjudicate appeals in discharge cases to the "Chief Appeals Officer of each designated field office." Federal Employee Appeals Authority Delegations of Functional and Administrative Authority (September 9, 1974). The Civil Service regulations in effect at the time stated that "[a]n appeals officer of the Appeals authority shall conduct the hearing. . . ." 5 C.F.R. § 772.307(c)(3) (1978). This would cover assistant as well as chief appeals officers. But conducting a hearing is not the same as adjudicating an appeal.

Although neither we nor counsel have been able to find any cases directly on point, there are a sufficient number in the general target area to establish a pattern. It is well settled that "an administrative officer may rely on subordinates to sift and analyze the record and prepare summaries and confidential recommendations, and the officer may base his decision on the reports without reading the full transcript." *Braniff Airways, Inc. v. Civil Aeronautics Board*, 379 F.2d 453, 461 (D.C.1967), and cases cited therein; *see Morgan v. United States*, 298 U.S. 468, 481–82, 56 S.Ct. 906, 911–12, 80 L.Ed. 1288 (1936).

In *F.C.C. v. Allentown Broadcasting Corp.*, 349 U.S. 358, 75 S.Ct. 855, 99 L.Ed. 1147 (1955), the Court considered the scope of a board's review of a hearing examiner's decision where the examiner had the authority to issue a recommended decision. It held that the circuit court had gone too far in ruling that the examiner's credibility findings based on demeanor of a witness should not be overruled by a board without "a very substantial preponderance in the testimony as recorded." The Court pointed out that this amounted to the "clearly erroneous" rule, which did not apply to agency review of administrative hearings. *Id.* at 364, 75 S.Ct. at 859. *See also Adolph Coors*

*Co. v. F.T.C.*, 497 F.2d 1178, 1184 (10th Cir. 1974), *cert. denied*, 419 U.S. 1105, 95 S.Ct. 775, 42 L.Ed.2d 801 (1975). The principle of liberal review of the hearing officer's decision by the agency board applies even more forcefully to the situation at bar where the hearing officer had no authority to issue the decision.

A substantial line of cases have held that, although the degree of deference due an examiner's final decision depends upon the importance of credibility in a particular case, the final administrative decision-maker can disagree with the examiner's credibility determinations provided it demonstrates an awareness that it is disagreeing with the examiner's findings, independently considers the record, and sets forth the reasons for the disagreement. *General Dynamics v. Occ. Safety & Health Review Comm.*, 599 F.2d 453, 463 (1st Cir. 1979) and cases cited therein; *Local No. 441, Int'l Bhd. of Elec. Workers v. NLRB*, 510 F.2d 1274, 1276–77 (D.C.Cir.1975); *Greater Boston Television Corp. v. F.C.C.*, 444 F.2d 841, 853 (D.C.Cir.), *cert. denied*, 403 U.S. 923, 91 S.Ct. 2233, 29 L.Ed.2d 701 (1971); *see International Bhd. of Teamsters, Chauffeurs v. NLRB*, 587 F.2d 1176, 1181 (D.C.Cir.1978); *Bangor & A.R. Co. v. I.C.C.*, 574 F.2d 1096, 1110 (1st Cir.), *cert. denied*, 439 U.S. 837, 99 S.Ct. 121, 58 L.Ed.2d 133 (1978); *cf. Ala. Assoc. of Ins. A. v. Board of Govs. of Fed. Res. Sys.*, 533 F.2d 224, 248–49 (5th Cir. 1976), *reh'g & reh'g en banc denied*, 558 F.2d 729 (1977), *cert. denied*, 435 U.S. 904, 98 S.Ct. 1448, 55 L.Ed.2d 494 (1978).

There is no suggestion here that Grossman did not independently consider the record. The MSPB decision discussed the alleged procedural violation and the nature of the relevant testimony, and pointed out, based on factors found in the record, why it discredited the testimony supporting a finding of procedural error. And, we emphasize that, unlike in the cases cited above, Spack did not have any authority to issue his own decision.

Appellant's main argument is that the credibility findings of the hearing officer could not be reversed without an articu-

lation in the record of the reasons for such reversal. There is nothing in the MSPB decision about the reversal by Grossman of Spack's credibility assessments of Hinkley and McFague. Assuming without deciding that Spack's initial recommended decision and Grossman's reversal of the credibility determinations are properly part of the administrative record subject to judicial review,[4] we reject appellant's contention that failure to articulate this fully in the MSPB decision is fatal. Requiring such a disclosure would unduly emphasize the importance of a subordinate's view to the point of encroaching on the authority of the decision making official. Disclosure would also have an inhibiting effect on the free interaction and candid discussion between the chief and his subordinate that is, or at least should be, part of the administrative decision making process. Courts have been very reluctant to probe the mind of a decision-maker, and have recognized a strong "presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975); *accord, United States v. Morgan*, 313 U.S. 409, 422, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941); *cf. Montrose Chem. Corp. v. Train*, 491 F.2d 63, 71 (D.C.Cir. 1974). Before a probe is permitted, there must be a strong showing of impropriety or no explanation of the administrative decision on the record. *See, e.g., Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971); *United States v. Morgan*, 313 U.S. 409, 422, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1971); *National Courier Ass'n v. Board of Govs. of Fed. Res. Sys.*, 516 F.2d 1229, 1242 (D.C.Cir.1925). *See generally KFC Nat'l Mgt. Corp. v. NLRB*, 497 F.2d 298, 303–05 (2d Cir. 1974), *cert. denied*, 423 U.S. 1087, 96 S.Ct. 879, 47 L.Ed.2d 98 (1976); *National*

*Nut. Foods Ass'n v. FDA*, 491 F.2d 1141, 1142–46 (2d Cir.), *cert. denied*, 419 U.S. 874, 95 S.Ct. 135, 42 L.Ed.2d 113 (1974).

There has been no showing of bad faith or impropriety here and the MSPB decision did adequately explain the reasons for rejecting McFague's testimony and crediting that of Hinkley. It follows, therefore, that there was substantial evidence, as the district court found, for the MSPB finding that the regulations requiring that the discharge decision "shall be made by a higher level official ... than the one who proposed the adverse action" were not violated.

Finally, we find appellant's claim that the district court erred by excluding, as inadmissible hearsay, a letter from Paul D. Mahoney, Deputy Managing Director of the MSPB, to appellant's attorney to be without merit. The government did not object to the introduction of the letter, and the district court admitted it into evidence and discussed it in its decision.

*Affirmed.*

---

4. Spack's testimony and his affidavit suggest that he and Grossman disagreed as to findings, including those based on credibility, and also as to what the legal effect of the testimony should be in resolving appellant's claim of procedural error. Spack failed to specify in the affidavit or at the hearing before the district court what aspects of Hinkley's and McFague's testimony made him reject the former and credit the latter. The MSPB opinion contained clear language reaching the opposite result based on factors bearing on credibility that were found in the record. And, significantly, Spack himself testified before the district court that Grossman told him that he (Grossman) believed that, even if credited, McFague's testimony did not establish a procedural error.