In re RHODE ISLAND COMMISSION FOR HUMAN RIGHTS.

Nos. 81–406–M.P., 82–342–M.P. and 83–5–M.P.

Supreme Court of Rhode Island.

March 13, 1984.

Amato A. DeLuca/Michael A. St. Pierre, Revens & DeLuca Ltd., Providence, Anthony A. Cipriano, (Legal Counsel for Dept. of Corrections) William T. Murphy, Dennis J. Roberts II, Atty. Gen., Providence, for respondents.

Paul B. McMahon, Stephen J. Fortunato, Pawtucket, William G. Savastano, North Smithfield, Cynthia M. Hiatt, (Legal Counsel for RI Commission on Human Rights), Thomas Pearlman, Providence, for petitioners.

## OPINION

KELLEHER, Justice.

We are in this proceeding, at the instance of the Rhode Island Commission for Human Rights (the commission), reviewing [1] rulings

1. Our review comes by way of our grant and consolidation of the commission's three petitions for statutory writs of certiorari that were issued pursuant to the provisions of the Administrative Procedures Act, specifically, G.L.1956 (1977 Reenactment) § 42–35–16.

made by three Superior Court justices, all of which hold that at least three of the five members of the commission must be present at hearings when an employer takes issue with the commission's charge that the employer has engaged in certain discriminatory practices that are barred by the state Fair Employment Practices Act, G.L.1956 (1979 Reenactment) chapter 5 of title 28 (the act). After these rulings were made, judgments were entered setting aside the findings made by the commission that the three employers who had appealed the commission's rulings to the Superior Court had engaged in various discriminatory practices.

In order to provide a better perspective on the nature of the controversy now before us, we shall set forth the relevant portions of the act. The commission consists of five members, each of whom is appointed for a five-year term by the Governor with the advice and consent of the Senate. Sections 28–5–8 and –9. In speaking of a quorum, the General Assembly in § 28–5–10 declared, "Three (3) members of said commission shall constitute a quorum for the purpose of conducting the business thereof." This declaration on its face is quite clear, but the statute falls short of its mark, for nowhere are we specifically informed about just what portion of the commission's business the General Assembly had in mind when it required the presence of at least three commissioners to transact that business.

In determining this question, we are reminded of an observation made by the noted British humorist A.P. Herbert when, in his compilation of "misleading cases" in the book *Uncommon Law* (1959), he quotes the noted lament of "Lord Mildew," who, while complaining about a legislative product of Parliament, said, "If Parliament does not mean what it says, it must say so."

 Unlike Herbert's mythical jurist, the court will not complain but will go on to construe the pertinent provisions of the Fair Employment Practices Act, having in mind our obligation to give, if possible, effect to all of the act's provisions, with no sentence, clause, or word construed as unmeaning or surplusage. *Montaquila v. St. Cyr*, R.I., 433 A.2d 206 (1981); *Rhode Island Chamber of Commerce v. Hackett*, R.I., 411 A.2d 300 (1980); *St. Clare Home v. Donnelly*, 117 R.I. 464, 368 A.2d 1214 (1977). Similarly fundamental is the principle that in situations in which a particular statutory provision is part of a single statutory scheme, the legislative intent must be gathered from an examination of the entire statute rather than from one part only. 2A Sutherland, *Statutes and Statutory Construction*, § 46.05 at 56 (4th ed. Sands 1973).

The General Assembly, in speaking of the purposes of the commission, certainly used precise language when in § 28–5–3, as amended by P.L.1981, ch. 167, it said:

"It is hereby declared to be the public policy of this state to foster the employment of all individuals in this state in accordance with their fullest capacities, regardless of their race or color, religion, sex, handicap, age, or country of ancestral origin, and to safeguard their right to obtain and hold employment without such discrimination."

Section 28–5–13 details eleven powers and duties of the commission to help it achieve this goal. Among the powers conferred are the ability to (1) appoint attorneys and agents as it deems necessary, (2) investigate charges of unlawful employment practices, (3) hold hearings in connection with those investigations, and (4) adopt rules [2] which will effectuate the purposes of the act.

---

**2.** Rule 10.03 of the commission, which deals with the hearing which is conducted after a complaint has been filed charging a firm or individual with engaging in discriminatory practices, stipulates that a hearing on such complaint "shall be conducted * * * by the full Commission or one or more members thereof or by one or more hearing examiners or any combination of the above * * *." Rule 12.-02[A] stipulates: "Three Commissioners must participate in the decision on a case. A majority of the three Commissioners must agree on the decision and order."

Two of the hearings in the controversies now before us were conducted by two commissioners and the third before a single commissioner.

The commission is empowered and directed by the terms of § 28–5–16 to prevent any person from engaging in any of the unlawful employment practices set forth in the act, but before a formal hearing can be conducted pursuant to the provisions of §§ 28–5–18 to 28–5–27 inclusive, an attempt must be made to gain compliance with the act's purposes through the informal techniques of conference, persuasion, and conciliation.

Some years ago, in *LaPetite Auberge, Inc. v. Rhode Island Commission for Human Rights,* R.I., 419 A.2d 274, 280 (1980), a description of the commission's "typical" enforcement pattern was given. It bears repeating here.

Charges of unlawful employment practices are investigated by the commission's staff. These charges may come about because of a complaint by aggrieved individuals or organizations devoted to protection of one's civil liberties or by, or at the instigation of, the commission's staff. If the staff's investigation of any charge leads to a finding by the "preliminary investigating commissioner" of a probability that unlawful practices have been or are being engaged in, the conciliation route is pursued. The conciliation process is detailed in § 28–5–17.

If the conciliation efforts fail, § 28–5–18 comes into play. The "commission" can then issue to an employer a complaint that specifies the charge and contains a notice that a hearing on the charge will be held before the "commission, a member thereof, or a hearing examiner." Any complaint issued pursuant to this section must be issued within one year of the commission of the unfair practice that gave rise to the charge.

The "commission, member thereof, or hearing examiner conducting the hearing" has the power, because of § 28–5–19, to amend any written complaint at any time

prior to the issuance of an order based thereon. This section also bars the preliminary hearing "commissioner" from participating in the formal hearing on the charge.

Section 28–5–21 specifically states that in any proceeding the "commission, its member, or its agent" shall not be bound "by the rules of evidence prevailing in the courts."

At this juncture in the act, all mention of hearings terminates. As can be seen, up to this point the General Assembly has permitted the commission to share its business with the individual commissioners and the commission's staff. However, beginning with § 28–5–22, we soon discover that there is no mention whatsoever of a commissioner or hearing examiners or agents, but instead the act deals with the commission's consideration of the evidence adduced at the formal hearing. Section 28–5–22 specifically states that the "commission," in evaluating the practices followed by the employer, will "take into account all evidence, statistical or otherwise, which may tend to prove the existence of a predetermined pattern of employment * * *." Section 28–5–24 states that if, upon all of the testimony taken, the "commission" shall determine that an employer has engaged in or is engaging in unlawful employment practices, the "commission" shall state its findings of fact and shall issue and cause to be served on such employer an order requiring the employer to cease and desist from the unlawful activities. On the other hand, § 28–5–25 authorizes the dismissal of a complaint "[i]f the commission shall find that no probable cause exists for crediting the charges, or, if upon all the evidence, it shall find that a respondent has not engaged in unfair employment practices * * *."

■ By comparing the quorum requirements of § 28–5–10 with the other relevant portions of the act, we reach the ineluctable conclusion that the "business" the Legislature had in mind when it enacted § 28–5–

The three Superior Court justices, each of whom considered one of the appeals taken by the three employers, were of the unanimous belief that hearings at which an employer ap-

pears to dispute a charge of discrimination constitute a major portion of the "business" referred to in G.L.1956 (1969 Reenactment) § 28–5–10's quorum requirement.

10 was and is the decision-making process, which only the commission can undertake once the evidence has been adduced at a hearing provided by § 28–5–9. The "commission" is to consider the evidence and state its conclusions. A quorum of the five commissioners must be present to examine the facts and reach a conclusion, but the facts may be gathered by less than a quorum of the commission, and those doing the gathering need not be members of the commission.

The conclusion we have reached is supported by general rules of administrative procedure. Our own Administrative Procedures Act contemplates the fact that agency officials need not hear the evidence. General Laws 1956 (1977 Reenactment) § 42–35–11.[3] Since we do not have a clear statutory mandate to the contrary, we are confident in resting with a rule, routinely recognized by federal courts under their Administrative Procedures Act, that it is not necessary for a commissioner to hear in order to decide.[4] *Normile v. McFague,* 685 F.2d 9, 12 (1st Cir.1982).

■ We find that procedural fairness exists when a quorum of the commission reaches its decision after having access to a transcript of the hearing and also the evidence, some of which may have been gathered by its staff. There is a presumption, soundly established, rationally reached, that administrative officials will properly consider the evidence before they reach a decision. *Jeffrey v. Platting Board of Review*

*of South Kingstown,* 103 R.I. 578, 239 A.2d 731 (1968).

Our search has ended. The Legislature has told us what it meant. It just took a bit of searching.

The petitions for certiorari are granted, the judgments appealed from are quashed, and the cases are remanded to the Superior Court for further proceedings.

---

**3.** General Laws 1956 (1977 Reenactment) § 42–35–11 states in part: "Whenever in a contested case a majority of the officials of the agency who are to render the final decision have not heard the case or read the record * * *." The Administrative Procedures Act obviously recognizes that the sheer number of cases before an agency forbids a quorum from actually hearing them.

**4.** At its January 1983 session, the General Assembly amended G.L.1956 (1979 Reenactment) § 28–5–10 by providing that a single human rights commissioner or hearing examiner could preside at evidentiary hearings as long as the decision was rendered by a quorum of the com-

mission which had read "the full transcript." Public Laws 1983, ch. 203, § 1. The enacting clause made it clear that the amendment was to be applied to hearings conducted subsequent to the time the 1983 amendment became law. The three hearings with which we are presently concerned predate the 1983 amendment.

Earlier, the General Assembly, at its January 1979 session, had amended G.L.1956 (1977 Reenactment) § 39–1–11 by providing that only one of the three-member Public Utilities Commission need be present at any hearing but also stipulated that a majority of the commission must participate in the decision-making process. Public Laws 1979, ch. 95, § 2.