[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This is a civil action in two counts. The first count is a routine administrative appeal from a decision of the Director of the Department of Transportation (hereinafter simply "the Director" and "the Department") issued on July 27, 1992. In that decision the Director upheld and affirmed a decision of the Dealers Hearing Board (hereinafter "the Board") by which the defendant Nissan Motor Corporation in U.S.A. (hereinafter "Nissan") was permitted under G.L. 1956 (Reenactment of 1982) §31-5.1-4.2, as amended by P.L. 1991, ch. 50, § 2, to establish a Nissan franchise operated by defendant Nissan of Smithfield, Inc. (hereinafter "Nissan of Smithfield") in Smithfield. The plaintiffs are Ocean State Nissan, Inc., a franchised Nissan dealership in Warwick, and Viking Pontiac-Cadillac-Nissan, Inc., a franchised Nissan dealership in East Providence, both of which filed timely protests under the statute with the Department against the establishment of the Nissan dealership in Smithfield. One of the grounds of appeal is that the Board violated G.L.1956 (Reenactment of 1984) § 42-46-3, which requires that every meeting of all public bodies shall be open to the public unless closed pursuant to §§ 42-46-4 and 42-46-5. The second count is a claim for declaratory relief under § 42-46-8, declaring the decision of the Board null and void because of a violation of the open meeting law.
Chapter 5.1 of Title 31 of the General Laws is an extensive and comprehensive statutory regulation of business practices among motor vehicle manufacturers, distributors and dealers. Section 31-5.1-4.2 requires that any manufacturer, which seeks to enter into a franchise establishing a new motor vehicle dealership within a relevant market area where the same line make is then represented, must by certified mail first notify the Department and each new motor vehicle dealer in that line make in that relevant market area of its intention to establish an additional dealership in that market area. Any existing dealership in the market area may file a protest against such an establishment with the Department. That protest stays the establishment of the additional dealership pending a decision by the Department after hearing that there is good cause for not (sic in statute) permitting the additional dealership. In determining whether such good cause has been shown[1] the department is required to consider:
 "(1) Permanency of the investment of the existing new motor vehicle dealer(s) in the community;
 (2) Whether the new motor vehicle dealers of the same line make in that relevant market area are providing adequate consumer care for the motor vehicles of the line make in the market area which shall include the adequacy of motor vehicle sales and service facilities, equipment, supply of motor vehicle parts, and qualified service personnel;
 (3) Whether there is reasonable evidence that after the granting of the new motor vehicle dealership, that the market would support all of the dealerships of that line make in the relevant market area;
 (4) Consequently, whether it is injurious to the public welfare for an additional new motor vehicle dealership to be established."
When it was originally enacted by P.L. 1981 ch. 346, § 3, the hearing and decision were functions of the motor vehicle dealers' license commission, which was eliminated in 1991. When §31-5.1-4.2 was amended in 1991 to eliminate references to that commission, the hearing and decision function was vested in the Department without further specification.
The Department has established the Board by regulation with authority to hear evidence and make decisions on behalf of the Department pursuant to § 31-5.1-4.2. The regulations further provide:
 "Any licensee, consumer or other person in interest, being dissatisfied with the final decision of the Board, shall file a written request for review with the Director of the Department of Transportation. Request for review must be made within ten (10) days of receiving the Board's decision."
The scope of the Director's review is not specified in the statute or the regulation. Cf. Environmental ScientificCorporation v. Durfee, 621 A.2d 200 (R.I. 1993) (Relationship between departmental hearing officer and reviewing director clearly established). Jurisdiction of this Court is found in §§31-5.1-4.2(c) and 42-35-15.
On March 28, 1991 Nissan gave statutory notice of its intent to establish an additional dealership in Smithfield, Rhode Island. The plaintiffs filed a timely protest with the Department on April 23, 1991. The Board held open hearings on April 2 and 3, 1992. One member of the Board did not attend the second day of the hearings. At the close of the hearing on April 3, 1992 the three remaining members of Board retired to a private office where they deliberated in private and decided on a two-to-one vote to permit the dealership and grant a dealer's license to Nissan of Smithfield. On April 9, 1992 at a public session the Board announced its decision and the Department forthwith issued a license to Nissan of Smithfield. The plaintiffs promptly claimed a review by the Director on April 17, 1992. In their claim of review the plaintiffs asserted both legal and factual grounds for reversal of the Board's decision but did not assert that the Board had failed to comply with § 42-35-12.
Thereafter, on April 21, 1992 the Board chairman did notify the parties and their counsel in writing of the Board's findings of fact and its decision. On April 30, 1992 the plaintiffs, through counsel, requested that the Director consider their request for review on April 17, 1992 to encompass the Board's April 21 decision. Next, on May 26, 1992, the Board chairman issued an "Amended" decision by letter to the parties and counsel. The amendment revised the Board's findings with respect to the permanency of the investment of existing new motor vehicle dealers in the community, as it is required to consider by §31-5.1-4.2(b)(1). To their previous claims of review by the Director the plaintiffs added a further claim on June 4, 1992, asserting that the Board lacked authority to issue an amended decision and had violated the "Open Meeting Law" in doing so.
On July 27, 1992 the Director issued his decision on review. Although no specific standard or scope of review is set out in the statute or regulations, the Director in this case read the entire transcript of testimony presented during the two days of hearing. He reviewed all the relevant evidence. He considered the entire file. In his decision he adverted to and accepted testimony that there were no Nissan dealerships in the proposed area, that there was substantial growth in population and commercial activity in that area and that the proposed site was readily accessible to people both in the local area as well as the State as a whole. In addition, he accepted testimony that car shoppers usually stay within a ten-mile radius of their homes and that there have been no additional new Nissan dealerships since 1975 in the Providence metro area. He resolved conflicting expert testimony to conclude that the proposed dealership was remote from existing dealerships and that consumers have no local Nissan service available to them. He concluded that the establishment of the dealership at the proposed site would afford improved accessibility and wider choice of dealerships to the public. Finally, he found no testimony or credible evidence to support the allegation that the proposed dealership would be injurious to the general public. Accordingly, he upheld and affirmed the decision of the Board.
I.
The plaintiffs contend that the deliberation and decision of the Board in a private, closed session on April 3, 1992 violated the provisions of Chapter 46 of Title 42 of the GeneralLaws (the "Open Meetings Law"). They are correct. Whether due to ignorance or wilfulness, the proceedings of the Board on April 3, 1992 at the private, closed session were a blatant violation of the law.
It does not follow, however, that the plaintiffs are automatically entitled to the relief they seek. First, the jurisdiction of the Court to declare the action of the Board null and void is discretionary. The statute indicates that the Court "may" declare the action of the offending public body null and void, not that it "shall" so declare. Second, the decision appealed from is that of the Director and not the Board, and his decision cannot be nullified under the "Open Meetings Law," since he is not a public body as defined by the Act.
All of the Board's evidentiary hearings were conducted openly in full compliance with the provisions of the Open Meeting Law. Even if the Board's decision were to be nullified, it does not follow that the plaintiffs would be entitled to a new evidentiary hearing. All that would be required would be for the Board to deliberate again, openly, and arrive at its decision anew. Apparently, precisely that happened on April 9, 1992 at a meeting which did comply with the statute. The plaintiffs do not suggest that any member of the Board who heard all the evidence was or ever has been prepared to change his mind. Under § 42-35-15(g)
the plaintiffs are required to show that their substantial rights have been prejudiced because the administrative decision against them was made upon unlawful procedure or affected by other error or law. However egregious the Board's violation was, the plaintiffs cannot show that the ensuing decision was theresult of that violation.
The Court should not ignore the interests of Nissan and Nissan of Smithfield. They are in no way responsible for the Board's violation of the "Open Meetings Law." The plaintiffs do not suggest any reason why these defendants should suffer for the Board's dereliction. Section 42-46-1 asserts:
 "It is essential to the maintenance of a democratic society that public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy."
The principal interest protected by the Open Meetings Law is the public interest in public performance of public business. The protection of private interests of parties such as these plaintiffs is secondary but not unimportant. To the extent, however, that such private interests are protected by the law other private interests affected by that law must be considered in the exercise of the Court's discretion. This Court concludes that it would be inequitable for the non-public defendants to suffer disadvantage for an administrative failure for which they were not responsible and over which they had no control. That is surely true when the plaintiffs cannot show that they have been prejudiced by the administrative failure.
The Director's decision-making is obviously not subject to the "Open Meetings Law." He is not a public body. He conducted an independent review of the Board's decision from the entire evidentiary record. He concluded that the result reached by the Board on the record of the open, public hearing was justified. Even if the Board's decision were itself null and void as a matter of law as the plaintiffs contend, their argument that the Director's affirmance must also fail is misplaced. That is so, because the ultimate result reached may be factually correct, at least as between the parties, even if the procedure employed was improper, especially where an impartial reviewer was able to sustain the result from a fairly obtained public record.
II.
The plaintiffs further contend that both the letter decision of April 21, 1992 and the "amended" letter decision of May 26, 1992 either were not approved by the Board, or, if they were, that approval was had in violation of the "Open Meetings Law." They urge that the letter of April 21, 1992 was issued after they complained to the Director in their claim for review that the Board had failed to comply with the requirements of § 42-35-12
that its decision must be in writing and contain findings of fact and conclusions of law. They also point out that the Board purported to amend its decision on May 26 after they had claimed a review on April 30 of the April 21 decision.
Although the informality of the Board's decision-making process after the adjournment of the evidentiary hearing at about 6:00 p.m. on April 3, 1992 leaves a great deal to be desired, this Court can clearly discern the Board's ultimate findings and conclusions and the basis for its decision. The defendants contend that the findings and conclusions in both writings are in fact the findings and conclusions of the Board. The plaintiffs can show only that individual members of the Board did not specifically approve the language drafted by their counsel in the two letters.
The plaintiffs are correct that proper form under the "Open Meetings Law" and the Administrative Procedures Act would have been for the Board to have approved each letter by a recorded open vote at an open meeting with the item on a published agenda together with notice to all interested parties. The Board's administration of its post-hearing proceedings can only be described as chaotic. There is no justification for its deliberation and decision on April 3, 1992. There is no official record of that proceeding, and, as a result, it must be reconstructed by deposition of some of the members in attendance. There is no official record of the proceeding on April 9, 1992, when it is agreed by the parties that the Board announced its decision. Therefore, the Court cannot determine whether or not the plaintiffs were afforded an opportunity to be heard before the Board reached its ultimate conclusion. It seems to be undisputed that the letter decisions were not promulgated, approved or ordered issued at any kind of Board meeting. Notwithstanding all of this procedural disarray no member of the Board has disaffirmed the validity of the findings and conclusions in both letters.
As with the violation of the "Open Meetings Law" on April 3, all of these later improper procedures were remedied by the Director's independent review of the evidentiary record, compiled by the Board in full compliance with law. It is the Director's decision which this Court reviews under § 42-35-15 and not the Board's. This is especially so in this case where the Director did not simply adopt the Board's findings and conclusions as his own and affirm its decision. He made his own findings and drew his own conclusions, and, because he agreed with the Board's majority, upheld their decision. His review of this hearing record is not tainted by the Board's post-hearing mis-administration. In addition, it does not appear that the business defendants had any part in the Board's shortcomings, and so, there is no reason to penalize them.
III.
Compounding the Board's bizarre approach to administrative procedure was the question of the eligibility of one of its members to vote on the issues decided by the Board. During the first day of hearings on April 2, 1992 four members of the Board were present. There is no explanation in the record for the absence of the fifth member, but no party objected to his or her absence. One of the four members present on the Second had notified the Board some two weeks previously that he would be unavailable from April 3 through April 10. When he was notified of the hearing on April 2, this member reminded the Board's administrator that he would be unable to attend on April 3, but he attended and participated actively in the hearing on April 2.
On April 3 the hearing resumed with the remaining three members of the Board in attendance. No mention was made on the record of the public portion of the hearing by the Board or by any of the parties as to whether or not the absent member would participate in the Board's decision. At a deposition the absent member testified that he wished to have a vote on the issue presented to the Board, but that he acquiesced in what appeared to be a consensus of the Board that he could not. The Board heard extensive testimony and received a substantial volume of exhibits on April 3. As has already been pointed out, the Board proceeded to deliberate and decide the case secretly immediately following the close of evidence on April 3 in the absence of the fourth member.
The plaintiffs contend that they had a right to have a decision in which the fourth member participated. They argue further that the failure to allow the fourth member to vote somehow invalidates the Director's decision. In Re Rhode IslandCommission for Human Rights, 472 A.2d 1211 (R.I. 1984) is cited by the plaintiffs for the proposition that the absent member had a "right to view the evidence and vote." Such is not exactly the holding of that case. What that case held was that "it is not necessary for a commissioner to hear in order to decide." Id.,
at 1214.
Whatever rights that member may have had, the parties had a right only to a decision of a lawfully constituted quorum of the Board. Id. That they got. A quorum of the Board decided their case. The plaintiffs' bald assertion without any citation of authority that the failure to take the vote of the member who did not participate in the April 3 part of the hearing deprived them of a protected interest without due process and denied them equal protection of law is meritless.
IV.
Finally, the plaintiffs argue that the Director's decision was clearly erroneous in view of the reliable, probative and substantial evidence, considering the record as a whole. §42-35-15(g)(5). The scope of this Court's review pursuant to this section is very limited. We are to determine whether there is any legally competent evidence to support the agency's decision. If so, we are required to uphold the agency's conclusions. Strafach v. Durfee, No. 92-531-M.P., slip op. at 7 (R.I. December 23, 1993).
Mr. Mark Grimm, Nissan's regional sales manager in the Boston region, testified that he was responsible for the day-to-day sales operations of the 103 Nissan dealers in the six New England States and Western New York, less Fairfield County. He was familiar with market studies performed in 1982, 1985 and 1989 involving the Providence metropolitan area, which includes the marketing areas served by all the parties in this case. The purpose of these studies were to determine if Nissan dealerships were properly located in the area to get a fair share of the market. The studies concluded that Nissan's market share was deficient when measured against its import competition in the Providence region. An up-date of the 1989 study done in 1991 disclosed no change in the conclusion that Nissan needed a dealership in the Smithfield area.
Ms. Elaine Notarantonio, an associate professor of marketing at Bryant College in Smithfield, testified for Nissan. She has a Ph.D. degree in psychology, specializing in behavioral marketing, from the University of Rhode Island. The witness is also a marketing consultant with considerable experience in automobile retail marketing. She easily qualified as an expert without objection by the plaintiffs. Ms. Notarantonio conducted a feasibility study of the Smithfield area for Nissan of Smithfield. She categorically testified that in her expert opinion existing dealers are not providing adequate sales or service to customers in the material area. It was her further opinion that the market would support all of the existing dealers in Rhode Island area if Nissan of Smithfield were included. Finally, she concluded that not only would the establishment of a new dealership not be injurious to the public welfare, but that it would actually be beneficial. A majority of a quorum of the Board and the Director accepted the expert's opinions in spite of searching and severely testing cross-examination of the witness. This Court is not permitted to substitute its judgment for that of the Director on the weight of the evidence. § 42-35-15(g);Strafach v. Durfee, supra.
The final witness for the applicants was Mr. William Akers, of Irvine, California, who described himself as a self-employed automotive consultant, formerly employed for 25 years by Nissan in sales management and in dealer development, becoming national director of dealer development in 1979. He testified that Nissan had felt a need to establish a dealership in the Smithfield area since 1985. He gave as his opinion that a new dealership would enhance Nissan's market share in the Providence area, that existing Nissan dealerships were not adequately serving the market, and that the market would support the new dealership as well as existing dealerships. He went on to opine that not only would the market support existing dealerships if a new dealership were added, but that the opportunity of existing dealers would be enhanced.
The plaintiffs presented expert testimony from Mr. Lyman Asselin, who holds a doctorate degree from Harvard University Graduate School of Business in consumer behavioral marketing, has been on the faculty of a number of institutions of higher learning, and has published a number of learned articles. He has testified in some forty cases like the one before the Board. He was pre-eminently qualified to testify as an expert. Mr. Asselin gave it as his opinion that existing dealerships were providing adequate sales and service for Nissan customers in the relevant area. He concluded that the market would not support all of the dealerships if the new dealership were established.
The relative weight to be given to conflicting expert opinions is particularly one to be determined by an administrative agency and not one subject to efficient judicial review. There is an abundance of credible competent expert evidence in the record to support the Director's findings of fact.
The plaintiffs' appeal is denied and dismissed. The decision of the Director is affirmed. The defendants will present a form of judgment for entry on notice to the plaintiffs.
[1] Although the section initially seems to require that the protestors show there is good cause not to permit the additional franchise, subsection (d) plainly imposes the burden of showing good cause for the additional franchise on the manufacturer or dealer seeking to establish an additional franchise.