DECISION
Russell D. Ide and Mohawk Trail, L.L.C. (Plaintiffs) appeal the Charlestown Planning Commission's (Commission) April 11, 2001 amendment to the Charlestown Subdivision/Land Development Regulations (Regulations). Jurisdiction is pursuant to G.L. 1956 § 45-23-72. Plaintiffs also seek declaratory judgment pursuant to G.L. 1956 §9-30-1.
 FACTS/TRAVEL
On July 26, 2000, Plaintiff Russell D. Ide filed with the Commission an application for a four lot conventional subdivision, entitled Overlook I, to be located on the property designated as Charlestown Assessor's Map 23, Lot 197-3; and on September 26, 2000, Plaintiff Mohawk Trail, L.L.C. (Mohawk), of which Ide is the Managing Member, filed an application with the Commission for a five lot minor residential subdivision, entitled Overlook II, to be located on the property designated as Charlestown Assessor's Map 23, Lot 197-2. Plaintiffs seek to subdivide these properties known as Charlestown Assessor's Map 23, Lot 197-2 and Charlestown Assessor's Map 23, Lot 197-3.
At the time of Plaintiffs' applications, § 4.3 of the Regulations, entitled "Constraints to Development," provided:
 "When calculating the maximum number of allowable lots on any parcel, constraints to development
shall be deducted from the total acreage of the parcel. Such land may be included in any lot in any subdivision or land development project; provided, however, that such land shall not be counted toward the minimum lot size."
"Constraints to Development," at the time of Plaintiffs' applications, were defined in § 2.2 of the Regulations as follows:
 "[l]and that shall be excluded from density calculations of residential cluster subdivisions, multi-family developments, low- and moderate-income housing developments, the Planned Development District, and mobile home parks, and may not be considered as part of the minimum land area required. These lands include: . . . (8) Any area where slopes exceed fifteen percent as may be identified in the Soil Survey of Rhode Island from the United States Department of Agriculture or by topological survey."
Section 218-5 of the Charlestown Zoning Ordinance (Zoning Ordinance) defined "Constraints to Development" in almost identical terms to those of the Regulations.
After filing their applications with the Commission, Plaintiffs requested that Donald J. Dinucci, Charlestown Building Official, interpret several provisions of the Zoning Ordinance. Specifically, Plaintiffs asked "whether the area of lots contained in a conventional subdivision must be reduced by the amount of land which would otherwise meet the definition of `Constraints to Development' as set forth in the Zoning Ordinance." In a letter dated December 6, 2000, the Building Official responded: "I refer to the definition: Constraints to Development as adopted on Thursday, May 18, 2000 by the Town Council (copy enclosed). There is no language that applied to a conventional subdivision, therefore, the current definition would not include a conventional subdivision as it relates to zoning." (December 6, 2000 letter from Donald J. Dinucci, Building Official, to Margaret L. Hogan.)
At its February 14, 2001 Commission meeting, Commission members did not interpret "Constraints to Development" in the Regulations in the same manner that the Building Official had interpreted "Constraints to Development" in the Zoning Ordinance. Rather, the Commission informed Plaintiffs that pursuant to the Regulations, a conventional subdivision was subject to "Constraints to Development." Plaintiffs disagreed with the Commission's determination that conventional subdivisions were subject to "Constraints to Development," and by agreement, Plaintiffs' applications were continued.
Subsequently, at a special meeting held April 11, 2001, the Commission amended § 2.2 of the Regulations to eliminate the beginning sentences of the definition of "Constraints to Development." The eliminated section, which listed certain types of land developments, read as follows: "[l]and that shall be excluded from density calculations of residential cluster subdivision, multi-family developments, low-and moderate-income housing developments, the Planned Development District, and mobile home parks, and may not be considered as part of the minimum land area required. These lands include: . . . . " The Zoning Ordinance was amended on November 13, 2001, to reflect the changes made to the Regulations.
On May 10, 2001, prior to the date that the Zoning Ordinance was amended, Plaintiffs filed this timely appeal of the amendment to the Regulations. In their complaint, Plaintiffs assert that the amendment to the Regulations violates G.L. 1956 § 45-23-31 and request that this Court invalidate the amendment; issue an injunction preventing the application of the amendment to Plaintiffs' applications; and award attorney's fees. Plaintiffs also seek declaratory judgment that the amendment is a substantive change; that "Constraints to Development" as described in the pre-amended Regulations are not applicable to conventional subdivisions; and that the Building Official's interpretation of "Constraints to Development" is binding upon the Commission. Furthermore, Plaintiffs request that this Court invalidate the conceptual stage of review and allow Plaintiffs to proceed directly to preliminary review.
 STANDARD OF REVIEW
This Court possesses appellate review jurisdiction of an amendment to a subdivision regulation pursuant to G.L. 1956 § 45-23-72. That statute provides:
 "(a) Any appeal of an enactment of or an amendment of local regulations may be taken to the superior court for the county in which the municipality is situated by filing a complaint, as stated in this section, within thirty (30) days after the enactment, or amendment has become effective. The appeal may be taken by any legal resident or landowner of the municipality or by any association of residents or landowners of the municipality. The appeal does not stay the enforcement of the local regulations, as enacted or amended, but the court may, in its discretion, grant a stay on appropriate terms, which may include the filing of a bond, and make any other orders that it deems necessary for an equitable disposition of the appeal.
 (b) The complaint shall state with specificity the area or areas in which the enactment or amendment is not consistent with the Comprehensive Planning Act, chapter 22.2 of this title; the Rhode Island Zoning Enabling Act of 1991, § 45-24-27 et seq.; the municipality's comprehensive plan; or the municipality's zoning ordinance.
 c) The review shall be conducted by the court without a jury. The court shall consider whether the enactment or amendment of the local regulations is consistent with the Comprehensive Planning Act, chapter 22.2 of this title; the Rhode Island Zoning Enabling Act of 1991, § 45-24-27 et seq.; the municipality's comprehensive plan; or the municipality's zoning ordinance. If the enactment or amendment is not consistent, then the court shall invalidate the enactment or the amendment, or those parts of the enactment or amendment which are not consistent. The court shall not revise the local regulations to be consistent, but may suggest appropriate language as part of the court decision.
 (d) The court may in its discretion, upon motion of the parties or on its own motion, award reasonable attorney's fees to any party to an appeal, as stated herein, including a municipality."
The Planning Commission has the power to amend subdivision regulations. See G.L. 1956 § 45-23-52; Charlestown Subdivision/LandDevelopment Regulations § 10.2. Pursuant to G.L. 1956 § 45-23-72, aggrieved parties may appeal an amendment of the subdivision regulations to the Superior Court. This Court is authorized to invalidate any portion of an amendment which it finds to be inconsistent with "the Comprehensive Planning Act, chapter 22.2 of this title; the Rhode Island Zoning Enabling Act of 1991, § 45-24-27 et seq.; the municipality's comprehensive plan; or the municipality's zoning ordinance." G.L. 1956 § 45-23-72(c).
 MOOTNESS
Plaintiffs argue that the April 11, 2001 amendment to the Regulations renders the Regulations inconsistent with the Zoning Ordinance in violation of G.L. 1956 §§ 45-23-31 and 45-23-52(b), which require that subdivision regulations must be consistent with the local zoning ordinance. See G.L. 1956 § 45-23-31 (stating that "local regulations shall also be consistent with the . . . local zoning ordinance"); G.L. 1956 § 45-23-52(b) (stating that the "local regulations, and all of their amendments, shall be consistent with . . . [the] zoning ordinance"). Plaintiffs request this Court to invalidate the April 11, 2001 amendment and also seek declarations as to the interpretation and application of the Regulations with respect to their applications. Plaintiffs contend that the issue is not moot because their rights have been affected by the actions of the Commission in amending the Regulations.
The Commission, however, responds that Plaintiffs' appeal is moot. The Commission contends that effective November 13, 2001, the Zoning Ordinance was amended such that the definition of "Constraints to Development" in the Zoning Ordinance became identical to the definition of "Constraints to Development" in the Regulations.
The Rhode Island Supreme Court has "consistently held that a case is moot if the original complaint raised a justiciable controversy, but events occurring after the filing have deprived the litigant of a continuing stake in the controversy." This Court compared the Regulations' definition of "Constraints to Development," as amended April 11, 2001, with the Zoning Ordinance's definition of "Constraints to Development," as amended November 13, 2001, and found the definitions to be identical. The Regulations and Zoning Ordinance are presently consistent with one another with regard to "Constraints to Development." However, this Court's determination that the amendment to the Regulations is presently consistent with the Zoning Ordinance does not mean that Plaintiffs no longer have a stake in the controversy. Both the Regulations and the Zoning Ordinance provide for vested rights which allow an applicant to proceed under the Regulations/Zoning Ordinance in effect at the time that an application is deemed complete. SeeCharlestown Subdivision/Land Development Regulations § 1.7;Charlestown Zoning Ordinance § 218-4. Thus, if prior to April 11, 2001, Plaintiffs had filed with the Planning Commission completed applications for the proposed subdivision plans, Plaintiffs would have vested rights and consequently, a continuing interest in this Court's determination as to the date that the amendment to the Regulations became effective. Plaintiffs also have a continuing interest in this Court's interpretation of the Regulations with respect to their applications. Accordingly, this Court finds the instant appeal is not herein rendered moot.
 THE SUBDIVISION AMENDMENT
Plaintiffs also ask this Court to declare that the April 11, 2001 amendment to the Regulation — specifically, the definition of "Constraints to Development" — constituted a substantive change that rendered the Regulations inconsistent with the Zoning Ordinance as it was written at that time. According to Plaintiffs, the Commission's erasing of the list of specific land developments from the definition of "Constraints to Development," had the effect of making "Constraints to Development" applicable to all land developments; whereas the pre-amended Regulations' definition of "Constraints to Development," which contained the list of specific land developments, was applicable only to those land developments which were specifically listed. Thus, Plaintiffs ask this Court to declare that "Constraints to Development," as utilized in the pre-amended Regulations, were not applicable to conventional subdivisions, since the pre-amended definition did not include conventional subdivisions in its list of specific land developments.
Conversely, the Commission contends that the April 11, 2001 amendment to the Regulations was merely a "clarification" and did not constitute a substantive change or render the Regulations inconsistent with the Zoning Ordinance. The Commission argues that in construing "Constraints to Development," as utilized in the pre-amended Regulations, the Court must read together § 4.3, entitled "Constraints to Development," and § 2.2, which defines "Constraints to Development." The Commission asserts that reading these sections together evidences that the land developments which were listed in the pre-amended definition of "Constraints to Development" were illustrative rather than exhaustive. Thus, the Commission argues that "Constraints to Development," as utilized in the pre-amended Regulations were applicable to all developments-including conventional subdivisions.
Pursuant to the Uniform Declaratory Judgments Act, this Court may "declare rights, status, and other legal relations whether or not further relief is or could be claimed." G.L. 1956 § 9-30-1. Finding that Plaintiffs' rights are here affected by municipal regulations, this Court grants Plaintiffs' request for declaratory relief.
The rules of statutory construction are applicable to the construction of an ordinance. See Mongony v. Bevilacqua, 432 A.2d 661, 663 (R.I. 1981). Pursuant to accepted rules of statutory construction, § 4.3, which deals with "Constraints to Development," and § 2.2, which defines "Constraints to Development," should be read together. See In reRhode Island Comm'n for Human Rights, 472 A.2d 1211, 1212 (R.I. 1984) (stating that "in situations in which a particular statutory provision is part of a single statutory scheme, the legislative intent must be gathered from an examination of the entire statute rather than from one part only"). This Court is mindful that "an express enumeration of items in a statute indicates a legislative intent to exclude all items not listed."Greenhalgh v. Cranston, 603 A.2d 1090, 1092 (R.I. 1992). The pre-amended Regulations' definition of "Constraints to Development" expressly enumerated a list of specific developments to which "Constraints to Development" applied. Hence, based upon the aforementioned rule, "Constraints to Development" in the pre-amended Regulations were applicable only to those land developments which were expressly enumerated; they did not apply to those land developments which were not so enumerated. Consequently, since conventional subdivisions were not expressly enumerated in the pre-amended definition of "conventional subdivisions," this Court declares that "Constraints to Development" as utilized in the pre-amended Regulations, were not applicable to conventional subdivisions. After the Regulations were amended, such that the list of specific land developments was eliminated from the definition of "Constraints to Development," "Constraints to Development" were no longer limited to a specific list of land developments. Thus, this Court further declares that the amendment to the Regulations, by eliminating the list of specific land developments, constituted a substantive change to the Regulations.
This Court's determination as to the effective date of this April 11, 2001 amendment to the Regulations is governed by G.L. 1956 §§45-23-31(a) and 45-23-52(b). Since those sections require that the Regulations be consistent with the Zoning Ordinance, the April 11, 2001 amendment to the Regulations could not become effective until it was consistent with the Zoning Ordinance.
Prior to the April 11, 2001 amendment to the Regulations, the definition of "Constraints to Development" in both the Regulations and the Zoning Ordinance were virtually identical. Both initially included the following language in their definition of "Constraints to Development:" "land that shall be excluded from density calculations of residential cluster subdivisions, multi-family developments, low-and moderate-income housing developments, the Planned Development District, and mobile home parks, and may not be considered as part of the minimum land area required. These lands include:." The April 11, 2001 amendment to the Regulations eliminated this language from the Regulations' definition of "Constraints to Development" while said language remained in the Zoning Ordinance until November 13, 2001. Thus, this substantive change to the Regulations rendered the Regulations inconsistent with the Zoning Ordinance as it was written at that time since as of April 11, 2001, the Zoning Ordinance still contained the list of specific land developments. Therefore, this Court holds that the amendment to the Regulations did not become effective until November 13, 2001 — the date that the Zoning Ordinance was amended, effectively eliminating the list of land developments from its definition of "Constraints to Developments" and thus rendering the Zoning Ordinance's and the Regulations' definitions of "Constraints to Development" consistent with one another.
Plaintiffs, in their brief, also argue that the Commission was required to interpret the Regulations' definition of "Constraints to Development" in the same manner that the Building Inspector interpreted the Zoning Ordinance's definition of "Constraints to Development." In light of this Court's statutory interpretation of the amendment, this Court need not reach the issue of whether or not the Commission was bound by the Building Official's interpretation of the Zoning Ordinance.
 INJUNCTIVE RELIEF
Plaintiffs also seek a permanent injunction prohibiting the application of the April 11, 2001 amendment to its applications. "A party seeking injunctive relief `must demonstrate that it stands to suffer some irreparable harm that is presently threatened or imminent and for which no adequate legal remedy exists to restore that plaintiff to its rightful position.'" Nat'l Lumber Bldg. Materials Co. v. Langevin,798 A.2d 429, 434 (2002) (citations omitted). Additionally, the party must "demonstrate likely success on the merits and show that the public-interest equities weigh in favor of the injunction." Id. In the instant case, an adequate legal remedy exists since both the Regulations and the Zoning Ordinance provide for vested rights which allow an applicant to proceed under the Regulations/Zoning Ordinance in effect at the time that an application is deemed complete. See CharlestownSubdivision/Land Development Regulations §§ 1.7, 2.2; CharlestownZoning Ordinance § 218-4. The determination as to Plaintiffs' vested rights will govern whether or not the amended Regulations may ultimately be applied to Plaintiffs' applications. Thus, this Court denies Plaintiff's request for a permanent injunction.
 VESTED RIGHTS
The Commission is required to "determine upon submission of a written request from an applicant." Charlestown Subdivision/Land DevelopmentRegulations § 1.7. Vested rights are defined in § 2.2 of the Regulations as the "right to continue with an application fordevelopment under the Subdivision Regulations applicable at the time theapplication was submitted and deemed complete." The Zoning Ordinance provides a similar definition of vested rights in § 218-4:
 "Vested rights shall relate to the review of an application should the zoning ordinance change before the review process has been completed. Applications for development that are submitted and have been deemed complete before enactment of this Ordinance shall have vested rights to proceed with the application process according to the regulations applicable of the Zoning Ordinance in force at the time the application was submitted and deemed complete."
Upon Plaintiffs' written request, the Commission must deem Plaintiffs' applications for conventional subdivisions to be vested under the Regulations that were in effect at the time Plaintiffs' applications are deemed complete. However, this Court is mindful of Plaintiffs' unchallenged assertion that the minutes of the April 18, 2001 Commission meeting establish that their applications would have been deemed complete but for their failure to provide information relating to "Constraints to Development." As this Court has determined that "Constraints to Development" were not applicable to conventional subdivisions until November 13, 2001, this Court holds that the Commission was not entitled, on April 18, 2001, to deem Plaintiffs' applications incomplete based upon Plaintiffs' failure to submit those materials which are solely related to "Constraints to Development." Rather, the Commission is required to deem complete Plaintiffs' applications for conventional subdivisions on the date that all required application materials were submitted, excepting those materials solely relating to "Constraints to Development." If Plaintiffs' applications are deemed to have been complete prior to November 13, 2001, Plaintiffs have vested rights to proceed under the pre-amended Regulations, and thus "Constraints to Development" are not applicable to their applications.
Plaintiffs have also argued that the Commission should be equitably estopped from applying the amended Regulations to Plaintiffs' applications. However, in light of this Court's instructions regarding Plaintiff's vested rights and the availability of an adequate legal remedy, this Court need not address Plaintiffs' arguments for equitable estoppel.
 CONCEPTUAL STAGE OF REVIEW
Plaintiffs further assert that the Regulations' requiring a conceptual stage of review, in addition to the preliminary and final stages of review for a minor subdivision, creates an "impermissible" additional layer of review in contravention of G.L. 1956 § 45-23-38, which requires only the preliminary and final stages of review for a minor subdivision. Plaintiffs request that this Court declare that the conceptual stage violates the legislative findings and intent set forth at G.L. 1956 § 45-23-29. The Commission contends that the three stages of review are lawful.
General Laws § 45-23-38(a) provides that "[m]inor plan review consists of two stages, preliminary and final." (Emphasis added) However, the Regulations provide that "[m]inor subdivision review shall consist of three stages; Conceptual, Preliminary and Final." SeeCharlestown Subdivision/Land Development Regulations 8.1(A) (emphasis added). In addition to the requisite preliminary and final stages of review, the Regulations require a pre-application conference and a conceptual review meeting for minor subdivision applications.[1] Seeid. at §§ 6.3, 8.1. Applicants may not proceed to the preliminary stage of review until they acquire conceptual approval. See id. at Table 8.1. Section 45-23-35 of the Rhode Island General Laws provides that "[p]re-application meetings may be held for administrative and minor applications, upon request of either the municipality or the applicant," and that "at the pre-application stage the applicant may request the planning board or the technical review committee for an informal concept plan review for a development." Thus, the statute provides that the Regulations may require pre-application meetings for minor subdivisions, and the Commission is entitled to conduct conceptual plan reviews for minor subdivisions at the request of the applicant.
Section 45-23-52 of the Rhode Island General Laws requires that local regulations be consistent with all the provisions of the Development Review Act, G.L. 1956 §§ 45-23-25 through 45-23-74. All municipalities are required to "adopt land development and subdivision review regulations . . . which comply with all the provisions of this chapter [Development Review Act]." See G.L. 1956 § 45-23-26. Furthermore, the General Assembly declared that it was their intent "that certain local procedures for review and approval of land development and subdivision are the same in every city and town." G.L. 1956 § 45-23-29(c)(3).
However, there are substantive differences between the pre-application meetings and concept plan review as described in G.L. 1956 § 45-23-35
and the conceptual review that is mandated by the Regulations. Section45-23-35(b) provides that "[a]t the pre-application stage the applicant
may request the planning board or the technical review committee for an informal concept plan review for a development," (emphasis added), but that section does not authorize the municipality to mandate a concept plan review. Had the legislators intended that the municipality could mandate a concept plan review, they would have so stated. Compare G.L. 1956 § 45-23-35(a) (stating that "[p]re-application meetings may be held for administrative and minor applications, upon request of eitherthe municipality or the applicant") (emphasis added) with G.L. § 195645-23-35(b) (stating that "[a]t the pre-application stage the applicantmay request the planning board or the technical review committee for an informal concept plan review for a development") (emphasis added). Thus, by mandating a concept plan review, the Regulations are inconsistent with G.L. 1956 § 45-23-35(b).
The Regulations are also inconsistent with G.L. 1956 § 45-23-35 in that the Regulations do not allow an applicant to proceed to the preliminary stage until the applicant has secured conceptual approval. In contrast, G.L. 1956 § 45-23-35(e) does not require conceptual approval, even for major land developments. Rather, that section states that
 "[p]rovided that at least one (1) preapplication meeting has been held for major land development or subdivision application or sixty (60) days has elapsed from the filing of the pre-application submission and no pre-application meeting has been scheduled to occur within those sixty (60) days, nothing shall be deemed to preclude an applicant from thereafter filing and proceeding with an application for a land development or subdivision project in accordance with § 45-23-36."
Thus, the Regulations mandate a much more rigid and detailed conceptual review than is authorized by G.L. 1956 § 45-23-35.
Although G.L. 1956 § 45-23-35 allows the Regulations to require pre-application meetings and to provide for a concept plan review at the applicant's request, the Regulations' requirements that applicants undergo a mandatory concept plan review and secure conceptual approval before proceeding to the preliminary stage are inconsistent with G.L. 1956 §45-23-35. Thus, this Court declares that these requirements violate the legislative finding and intent as stated in G.L. 1956 § 45-23-39 and that they also violate G.L. 1956 §§ 45-23-26 and 45-23-52, which require the Regulations to be consistent with and comply with the provisions of the Development Review Act, G.L. 1956 §§ 45-23-25 through45-23-74.[2] See Town of Coventry Zoning Bd. of Review v. Omni Dev.Corp. No. 2002-20, slip op. at 16 (R.I., filed January 30, 2003) (holding that in "G.L. 1956 chapter 23 of title 45 entitled `Subdivision of Land,' the Legislature addressed the need for careful and uniform review of subdivision proposals" and that the General Assembly declared "its intention to unify all local procedures for review and approval of subdivision applications") (emphasis added).
Accordingly, this Court further declares that Plaintiffs are entitled to proceed with their applications pursuant to the Regulations, such as they are revised to comply with the Development Review Act, G.L. 1956 §§ 45-23-25 through 45-23-74. However, nothing in this Court's holding regarding the conceptual review stage shall be construed to prevent Plaintiffs' applications from being deemed complete.
 ATTORNEY'S FEES
Plaintiffs further request attorney's fees. In the instant case, this Court is entitled to award attorney's fees pursuant to G.L. 1956 §9-30-10 which provides that "[i]n any proceeding under this chapter [Uniform Declaratory Judgments Act], the court may make such award of costs as may seem equitable and just." Attorney's fees may also be awarded pursuant to G.L. 1956 § 45-23-72(d) which provides that "[t]he court may in its discretion, upon motion of the parties or on its own motion, award reasonable attorney's fees to any party to an appeal, as stated herein, including a municipality." However, this Court reserves judgment as to attorney fees until such time as affidavits regarding the amount and reasonableness of requested fees are submitted and a hearing has been held.
 CONCLUSION
This Court finds, with the November 13, 2001 amendment to the Zoning Ordinance, the April 11, 2001 amendment to the Regulations does not violate G.L. 1956 §§ 45-23-31 or 45-23-52(b). However, since the amendment rendered the Regulations inconsistent with the Zoning Ordinance as it was written at that time, the April 11, 2001 amendment to the Regulations did not become effective until November 13, 2001 — the date when the Zoning Ordinance was amended, such that the Regulations and Zoning Ordinance became consistent with one another. Thus, this Court declares that the April 11, 2001 amendment to the Regulations constituted a substantive change and that "Constraints to Development" as described in the pre-amended Regulations did not apply to conventional subdivisions.
Additionally, this Court holds that Plaintiffs have vested rights to continue with their applications under the Regulations/Zoning Ordinance applicable at the time their applications were deemed complete. If the Commission deems Plaintiffs' applications to have been complete prior to November 13, 2001, Plaintiffs' vested rights entitle them to proceed under the pre-amended Regulations, and thus "Constraints to Development" will not be applicable to their applications.
With respect to the conceptual stage of review, this Court declares that G.L. 1956 § 45-23-35 permits the Regulations to require pre-application meetings for minor subdivision reviews and permits the Commission, at the request of the applicant, to conduct a concept plan review. However, this Court further declares that the Regulations' mandatory concept plan review and requirement that applicants acquire conceptual review approval before proceeding to the preliminary stage are inconsistent with G.L. 1956 § 45-23-35 and thus violate G.L. 1956 §§ 45-23-26 and 45-23-52. Plaintiffs are entitled to proceed with their applications pursuant to the Regulations, such as they are revised to comply with the Development Review Act, G.L. 1956 §§ 45-23-25
through 45-23-74.
This Court has discretion to grant attorney's fees. However, judgment is reserved until affidavits are submitted, and a hearing is held.
Counsel shall submit the appropriate order for entry.
[1] During the pre-application meeting, the Administrative Officer "will advise the applicant of the applicable subdivision regulations, submission procedures, and checklist requirements" and the applicant is required to "submit conceptual plats and other supporting materials as required for review." See Charlestown Subdivision/Land DevelopmentRegulations at § 6.3(A)(1). After the pre-application meeting, applicants are required to schedule a conceptual meeting and must provide several conceptual layouts. See id. at § 6.3(A)(2). Section 6.3(B) of the Regulations requires that applicants submit that information which is delineated on the conceptual checklist.
[2] This Court is mindful that the Commission can comply with this Court's ruling simply by revising the current requirements of the preliminary stage so as to include that information that is now required at the conceptual stage. Furthermore, the Commission is entitled to require pre-application meetings as long as they are consistent with § 45-23-35. Thus, the Commission may conduct, at the pre-application stage, a conceptual review for a minor subdivision at the request of the applicant.