## RHODE ISLAND DEPARTMENT OF MENTAL HEALTH, RETARDATION AND HOSPITALS

### v.

### R.B.

No. 87–538–Appeal.

Supreme Court of Rhode Island.

Nov. 23, 1988.

Judith S. Calcagni, Cranston, for plaintiff.

Peter N. Dennehy, Mental Health Advocate, Ruth A. Glassman, Legal Counsel, Mental Health Advocate Office, Cranston, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal by R.B. from an order of the District Court certifying him for outpatient treatment at the Kent County Community Mental Health Center. We affirm. The facts of the case insofar as pertinent to this appeal are as follows.

R.B. was brought before the District Court for civil certification pursuant to G.L. 1956 (1984 Reenactment) § 40.1–5–8.

The petition was brought by the Department of Mental Health, Retardation and Hospitals (MHRH). R.B. at the time of the hearing was a twenty-seven-year-old man who had, according to the evidence, committed a violent unprovoked attack upon his father, an attack upon a ward nurse and several attacks upon his wife. Medical testimony indicated that he was suffering from a psychosis defined as paranoid schizophrenia exacerbated by alcohol abuse. Medical testimony also indicated that R.B. had suicidal tendencies which required intensive observation.

At the time of the final hearing on November 30, 1987, the psychiatrist who had attended R.B. at the Institute of Mental Health testified that R.B.'s condition was still such that his continued unsupervised presence in the community would give rise to a likelihood of serious harm to himself and others by reason of mental disability. He testified, however, that at this stage R.B. could be treated at a local community health center as an alternative to inpatient care. The trial justice found by clear and convincing evidence [1] that R.B. was

"suffering from a mental illness and that he [was] in need of care and treatment in some type of facility and would benefit therefrom * * * and that [his] continued unsupervised presence in the community without this type of treatment * * * would [give rise to] a likelihood of serious harm by reason of this mental disability * * * to either himself or to others."

The judge then determined that R.B. was "certifiable with the alternative of having him be certified to a mental health clinic." The trial justice ordered that he be certified to the Kent County Community Mental Health Center for necessary outpatient treatment and supervision.

R.B. appealed this decision on the ground that the District Court was not authorized by statute to certify a person pursuant to § 40.1–5–8 to any facility save an inpatient facility. With this contention, we respectfully disagree.

In order to determine the authority vested in the District Court by the Rhode Island Mental Health Law, G.L. 1956 (1984 Reenactment) chapter 5 of title 40.1, it is necessary to examine the statute in its various parts.

Section 40.1–5–2 sets forth the definitions to be utilized throughout the chapter. Section 40.1–5–2(3) defines the term "facility" as follows:

"(3) 'Facility' means a state hospital or psychiatric inpatient facility in the department, a psychiatric inpatient facility maintained by a political subdivision of the state for the care and/or treatment of the mentally disabled, a general or specialized hospital maintaining staff and facilities for such purpose, *any of the several community mental health services established pursuant to chapter 8.5 of this title,* and any other facility within the state of Rhode Island providing inpatient psychiatric care and/or treatment and approved by the director upon application of said facility. Included within this definition shall be all hospitals, institutions, facilities and services under the control and direction of the director and the department, as provided in this chapter. Nothing contained herein shall be construed to amend or repeal any of the provisions of chapter 16 of title 23, and of chapter 13 of title 40." (Emphasis added.)

Section 40.1–5–2(15) defines "alternatives to admission or certification" in the following terms:

"(15) 'Alternatives to admission or certification' means alternatives to a particular facility or treatment program and *shall include but not be limited to voluntary or court-ordered outpatient treatment, day treatment in a hospital, night treatment in a hospital,* placement in the custody of a friend or rela-

---

**1.** G.L. 1956 (1984 Reenactment) § 40.1–5–8(10) now requires proof by clear and convincing evidence in order to authorize civil certification.

This change was made by P.L. 1982, ch. 242. Previously the burden of proof required by statute was beyond a reasonable doubt. *See In re Doe,* 440 A.2d 712 (R.I. 1982).

tive, placement in a nursing home, referral to a community mental health clinic and home health aide services, or any other services that may be deemed appropriate." (Emphasis added.)

Section 40.1–5–8(10) empowers the District Court to issue an order in the following circumstances and with the following limitations:

"(10) *Order.* If the court at a final hearing finds by clear and convincing evidence that the subject of the hearing is in need of care and treatment in a facility, and is one whose continued unsupervised presence in the community would by reason of mental disability create a likelihood of serious harm, and that all alternatives to certification have been investigated and deemed unsuitable, it shall issue an order committing the person to the custody of the director for care and treatment or to an appropriate facility. In either event and to the extent practicable, the person shall be cared for in a facility which imposes the least restraint upon the liberty of such person consistent with affording him the care and treatment necessary and appropriate to his condition. No certification shall be made under this section *unless and until full consideration has been given by the certifying court to the alternatives to in-patient [sic] care, including, but not limited to, a determination of the person's relationship to the community and to his family, of his employment possibilities, and of all available community resources,* alternate available living arrangements, foster care, community residential facilities, nursing homes, and other convalescent facilities. A certificate ordered pursuant to this section shall be valid for a period of six (6) months from the date of the order. At the end of that period the patient shall be discharged, unless he is discharged prior to that time, in which case the certification shall expire on the date of such discharge." (Emphasis added.)

■ It should be noted that the court is required to provide for care "in a facility which imposes the least restraint upon the liberty of such person consistent with affording him the care and treatment necessary and appropriate to his condition." Section 40.1–5–8(10) further states that the court must give "full consideration * * * to the alternatives to in-patient [sic] care, including * * * all available community resources."

■ This court has long applied a canon of statutory interpretation which gives effect to all of a statute's provisions, with no sentence, clause or word construed as unmeaning or surplusage. *State v. Caprio,* 477 A.2d 67, 70 (R.I. 1984); *In re Rhode Island Commission for Human Rights,* 472 A.2d 1211, 1212 (R.I. 1984); *Murphy v. Murphy,* 471 A.2d 619, 622 (R.I. 1984); *Spikes v. State,* 458 A.2d 672, 674 (R.I. 1983); *Probate Court of East Providence v. McCormick,* 56 R.I. 308, 320, 185 A. 592, 597 (1936), *rearg. denied,* 57 R.I. 157, 189 A. 2 (1937). "Where one provision is part of the overall statutory scheme, the legislative intent must be gathered from the entire statute and not from an isolated provision." *State v. Caprio,* 477 A.2d at 70; *accord In re Rhode Island Commission for Human Rights,* 472 A.2d at 1212.

■ Applying this fundamental canon of statutory construction, we cannot assume as the mental health advocate would have us do that any part of this statutory scheme is meaningless or surplusage. Consequently, the requirement that the trial justice must consider the alternatives to inpatient treatment would necessitate our looking to the definition of facility in § 40.1–5–2(3) which would include "any of the several community mental health services."

■ We must further look to § 40.1–5–2(15) which defines "alternatives to admission" as including "voluntary or court-ordered outpatient treatment." The mental health advocate argues that the term "court-ordered outpatient treatment" does not apply to treatment ordered by the District Court but by some other court such as the Family or Superior Court. This argument is not persuasive. The Mental Health Act places the sole jurisdiction of

civil court certification (in respect to adults) in the District Court. Section 40.1–5–8(1) authorizes the filing of a verified petition in the District Court "for the certification to a facility of any person who is alleged to be in need of care and treatment in a facility, and whose continued unsupervised presence in the community would create a likelihood of serious harm by reason of mental disability."

It would be a strained interpretation indeed, to suggest that the Legislature did not intend to repose in the District Court the authority to consider alternatives to inpatient treatment and to order outpatient treatment as mentioned in § 40.1–5–2(15), if the District Court should find such outpatient treatment to be a suitable alternative. To suggest that the Legislature intended that the ordering of outpatient treatment be left to the mere fortuitous possibility that some other court in some undefined proceeding would have the authority to order such treatment, but that no such authority was to be granted to the court to whom the Legislature entrusted the implementation of the Mental Health Act, is to ascribe to that body an intent to reach an absurd or unreasonable result. We have consistently declined so to interpret enactments of our Legislature. *In re Doe*, 440 A.2d 712, 716 (R.I. 1982); *Coletta v. State*, 106 R.I. 764, 769, 263 A.2d 681, 684 (1970); *Wilkinson v. Harrington*, 104 R.I. 224, 239, 243 A.2d 745, 753 (1968).

Consequently we are of the opinion that the District Court by clear implication has been given both the authority and the mandate to consider as an alternative to inpatient certification the suitability of court-ordered outpatient treatment at an authorized community mental health clinic. The mental health advocate and amici curiae have raised certain questions which we feel should be answered for the guidance of the District Court in future determinations.

A brief filed on behalf of the Rhode Island Council of Community Mental Health Centers suggests that such centers should not be required to accept patients without an opportunity to be heard by the court concerning its ability to provide suitable treatment and medications. We are assured that in the case at bar the Kent County Community Mental Health Center was consulted and indicated its willingness to accept R.B. prior to the issuance of the court order. We are of the opinion that such acceptance by the community mental health center should be a necessary condition precedent to the ordering of outpatient treatment at such a facility. No community mental health center should be ordered to accept a patient suffering from mental disability unless its officials are willing to do so.

The mental health advocate and amici curiae raise the question of the method of enforcement of such court-ordered outpatient treatment. The answer to this question is relatively simple. In the event that the patient does not comply with the order to accept outpatient treatment, the court which had already certified the patient as requiring treatment in an appropriate facility would then be constrained, if the patient's unsupervised presence in the community would still give rise to a likelihood of harm to himself or others, to change its certification to inpatient treatment. The outpatient facility which had accepted the patient would have the obligation of reporting to MHRH the fact that the patient was not complying with the regimen of treatment established by the mental health center. MHRH would then petition the District Court to reconsider its certification. The District Court would have adequate authority pursuant to § 40.1–5–8(10) to order that the patient be committed to the custody of the director of MHRH for care and treatment or to an appropriate inpatient facility.

The mental health advocate and the Rhode Island Protection and Advocacy System, Inc., amicus curiae also question the length of such court-ordered outpatient treatment. The answer to this question is found in the specific terms of § 40.1–5–8(10). This subsection provides that a certification "shall be valid for a period of six (6) months from the date of the order." This provision would be controlling in respect to outpatient as well as inpatient court-ordered treatment. Should

the official in charge of the community mental health facility be of the opinion that the patient is not sufficiently recovered to be discharged from treatment, he or she may, in cooperation with the director of MHRH, file a petition for recertification within the time limited by § 40.1–5–11(3). Pursuant to such a petition a recertification hearing would follow all the procedures set forth in § 40.1–5–8.

We deem the legislative structure created by the Mental Health Act to include, among other alternatives, court-ordered outpatient treatment as one of the legal responses available to the District Court. As indicated by the foregoing discussion, the statute as a whole provides for a sym-metrical application of this type of treatment subject to all the safeguards provided by the act which guarantee due regard for the liberty interests of the patient.

For the reasons stated, R.B.'s appeal is hereby denied and dismissed. The judgment of the District Court ordering outpatient treatment is hereby affirmed. The papers in the case may be remanded to the District Court.