[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This case is before the Court for decision on an appeal from an October 7, 2002 decision of the Zoning Board of Review for the City of Newport ("Zoning Board"). At the time, the Zoning Board was reviewing the propriety of a Zoning Certificate issued by the Newport Zoning Officer.
 Facts/Travel
Defendant Preservation Society of Newport ("the Society") is the owner of several historic mansions in the City of Newport. The Society operates these mansions as museums by selling mansion tours to the public. The Society's business is funded primarily by tourists who also contribute significantly to the surrounding area. The main attraction among the various mansions is one called "The Breakers," which is located in a residential district, zoned R-60 by the current Newport Zoning Ordinance ("Ordinance"). The Breakers originally existed as a permitted use, (Transcript, Zoning Bd. of Review In Re: The Appeal of NI,Limited at 8, 82 (Apr. 22, 2002 and Jun. 3, 2002)). However, under the Ordinance, as now in effect, museums are permitted in R-60 zones only by special permit. See CODIFIED ORDINANCES OF THE CITY OF NEWPORT, RHODE ISLAND, tit. 17, § 17.40.020.B.4. (1994) [hereinafter Ordinance]. There is no dispute that Society has not obtained a special use permit for the museum.
This controversy concerns the Society's proposed erection of a tent on The Breakers property. The controversy began in 2001. During the spring, summer, and fall months of 2001 the Society had a large tent erected on the lawn. The ostensible purpose of the tent was to sell tickets to The Breakers and to the Society's other mansions, to advertise these other mansions to visitors, and to provide shelter to potential ticket purchasers. Previously, tickets were sold from a small, two person booth which was not accessible by the public.[1] The new forum would have six ticket-selling stations, as well as two plasma television screens running advertisements.
In creating this new forum, the Society constructed a 2000 square foot platform anchored to the ground with cement pilings, and which included access ramps and decorative pergolas. Admittedly, this construction was done without any permission.[2] Subsequently, however, the Zoning Officer for the City of Newport, Guy Weston, ("Officer" or "Weston"), received complaints from neighbors of The Breakers and from the Historic District Commission regarding the tent. (Tr. at 86). Upon inspection, Weston informed the Society that the platform, ramps, and pergolas were unauthorized and that both Historic District Commission and zoning approval were needed for these structures.
On November 1, 2001 the Society applied to the Historic District Commission for approval of their plans to erect the tent supported by a 40 by 50 foot platform, and, on November 5, 2001, applied to the Board for a special use permit authorizing "extension of the present use of the premises as a museum to provide a ticket sales venue for the museum," and to "provide shelter and convenient services to persons purchasing tickets. . . ." The applicant referenced 17.108.020C as the applicable regulation.[3]
On March 27, 2002 the Historic District Commission issued a written decision denying the Society's November application, stating that "the proposed structure is incongruous and not compatible with the existing structures and site features in terms of materials, massing, scale and texture," and that the tent structure would be "visually and structurally incompatible and detracts considerably from the historic landscape. . . ." Thereafter, the Society abandoned its application for a special use permit, removed the platform, and embarked on a course designed to seek approval of the tent — or a declaration that no approval was needed — straight from the zoning officer.
The Society's attorney, William Corcoran, already aware of the Commission's decision, wrote to Weston on February 25, 2002. According to the letter, Weston had previously indicated that a tent alone would not constitute a structure requiring Historic District Commission approval. However, he had apparently considered the Society's plans to be a proposed intensification of the museum use which would require a special-use permit, pursuant to Ordinance § 17.108.020C. Mr. Corcoran's letter, however, submitted that the proposed tent would not intensify the use of the museum or expand ticket sales, but, rather, would merely provide a more comfortable venue for ticket purchasers.
In response to this letter, Weston, on March 4, 2002, issued a "Zoning Certificate."[4] The Certificate confirmed that the museum was in an R-60 and Historic District. Mr. Weston concluded that the museum use existed by way of special use permit. He also concluded that "[s]ince the existing platform, pergola, and ramps will be removed, the tent will not require the approval of the Historic District Commission." Mr. Weston's conclusion in this regard was based upon his opinion that a temporary tent is not a structure as contemplated by R.I. General Laws 1956 Title 45, Chapter 24.1 — governing "Historical Area Zoning" — or byOrdinance § 17.08.010, adopted pursuant to the state statute. (Testimony of Guy Weston, Tr. at 45-48).[5] Finally, Mr. Weston, citing his own familiarity with case law regarding what constitutes a "substantial revision," concluded that the use of a tent at The Breakers property would not constitute a substantial revision of a special use permit and, therefore, did not require Zoning Board approval.
On March 8, 2002, NI, Ltd. ("NI") and Bellevue Ochre Point Neighborhood Association ("the Association") filed an appeal from the Officer's decision, purportedly pursuant to G.L. 1956 §45-24-63 and Ordinance § 17.116.010.[6] The appeal challenged the Officer's determinations that the hotel use was specially permitted (even absent any permit applicable to the property) rather than non-conforming, and, alternatively, that the erection of a tent did not require Historic District Commission approval or another special use permit. The Zoning Board heard the matter on April 22, 2002 and June 3, 2002. At its first meeting, the Board voted to sustain Society's objection to plaintiff Association's appeal. The Board reasoned that the Association had not presented evidence that it owned property that would be affected by the Board's decision and, thus, that it was not an aggrieved entity for purposes of G.L. 1956 §45-24-64.[7] However, the Board continued to hear the appeal of plaintiff NI and, on October 7, 2002, issued what it designated a "decision."
In its "decision," the Board concluded that The Breakers museum existed as a special use and not as a nonconforming one, that tents are not considered as buildings or structures under the state and/or city building codes (and thus do not require a building permit), and that the regulation of tents is not within the jurisdiction of the HDC. The Board thus sustained the Officer's determination that HDC approval was not required and went even further to conclude that a building permit was unnecessary. Finally, the Board sustained the Officer's determination that no special use permit was required because the tent was not an intensification of use, finding that there was no evidence of injury to neighboring property, that the tent would promote the "education, pleasure and welfare" of Newport citizens, that the tent would ameliorate sidewalk congestion outside of The Breakers, and that the tent would be seasonal and have no permanent parts.
Within 20 days, Plaintiff NI filed an appeal to the Superior Court on October 23, 2002. Plaintiff NI challenges the Board's "decision" that The Breakers is a special use. It contends that although museums are allowed in R-60 districts via special use permits the museum here originally existed of right and must be now be considered a nonconforming use because no special use permit has ever been issued to it. Thus, NI contends that the change of a two-vendor ticket booth to a large tent is impermissible under Ordinance §§ 17.72.030.B. and C.[8]
Alternatively, NI contends that the Board erroneously determined that the use of the tent is not a prohibited "substantial intensification" of that use.[9] NI also challenges the Board's "decision" that a seasonal tent with foundation does not constitute a structure and does not require Historic District Commission approval. Finally, NI asserts that the Board erroneously dismissed the Association's appeal for lack of standing.
 Analysis
The instant matter is resolved by the same analysis that this Court applied in Tompkins v. Zoning Bd. of Review of the Town ofLittle Compton, C.A. 02-0204, R.I. Super. Lexis 133 (October 29, 2003). In that case, plaintiff challenged a zoning board's review purporting to uphold an Officer's determination that the town could not enforce its zoning ordinance as against that portion of a lot that lay beyond state lines. This court concluded that the board exceeded its statutory authority by purporting to create a binding decision through an unauthorized review process. Here, as in Tompkins, the Newport Zoning Board purported to issue a decision on appeal from an Officer's issuance of a Zoning Certificate. Thus, here, as there, the decision cannot standSee also Cohen v. Duncan, C.A. No. 2002-599, C.A. No. 2001-380, R.I. Super. LEXIS 103 (June 9, 2004).
Section 45-24-54 of the Rhode Island General Laws states:
 "The zoning ordinance must designate the local official or agency and specify minimum qualifications for the person or persons charged with its administration and enforcement, including: (1) the issuing of any required permits or certificates; (2) collection of required fees; (3) keeping of records showing the compliance of uses of land; (4) authorizing commencement of uses or development under the provisions of the zoning ordinance; (5) inspection of suspected violations; (6) issuance of violation notices with required correction action; (7) collection of fines for violations; and (8) performing any other duties and taking any actions that may be assigned in the ordinance. In order to provide guidance or clarification, the zoning enforcement officer or agency shall, upon written request, issue a zoning certificate or provide information to the requesting party as to the determination by the official or agency within fifteen (15) days of the written request. In the event that no written response is provided within that time, the requesting party has the right to appeal to the zoning board of review for the determination." (Emphasis added).
This provision authorizes a zoning officer to issue a zoning certificate or to provide other information to requesting parties. However, the provision clearly relegates any such certification or information to the status of an advisory determination only. The Legislature made this clear in two ways. First, the Legislature qualified its delegation of the authority to provide certificates and information with the words "for guidance and clarification only." Second, if this language was even plausibly ambiguous, the entire provision, in toto,
clarifies it. By writing a distinct provision for the officer's informational determination, the Legislature clearly distinguished the nature of this additional duty from the acts of "administration and enforcement," which describes those core functions of the zoning officer expressly enumerated. See G.L. § 45-24-54(1)-(8). "Administration and enforcement" includes management and imposition of the zoning ordinance; together, the penumbras of these terms include every act that could be binding. If the Legislature intended the informational determination to be similarly binding it would have included the provision in the list of core functions.[10] "[T]he expression of one or more items of a class and the exclusion of other items of the same class imply the legislative intent to exclude those items not so included." 2a Sutherland Stat. Const. § 47:23 (6th Ed.), 313 n. 7 (citing Southwestern Iron Steel Industries, Inc. v.State, 123 Ariz. 78, 597, P.2d 981 (1979)). And, while the list might be not be exclusive, the Legislature clearly contemplated the officer's provision of zoning certification, or otherinformational determination, and wrote a distinct provision for it — intentionally and expressly iterating the officer's advisory role. Thus, to conclude that an officer's certification or informational determination is anything more than advisory would ignore this separation of provisions. Furthermore, the conclusion renders the language "[i]n order to provide guidance and clarification" mere surplusage, thereby violating the "canon of statutory interpretation which gives effect to all of a statute's provisions, with no sentence, clause or word construed as unmeaning or surplusage." Local 400, International Federation ofTechnical and Professional Engineers v. Rhode Island State LaborRelations Board, 747 A.2d 1002, 1007 (R.I. 2000) (quoting RhodeIsland Department of Mental Health, Retardation, and Hospitals v.R.B., 549 A.2d 1028, 1030 (R.I. 1988)).
One of the means by which a zoning officer can provide information is through the issuance of a zoning certificate. A zoning certificate is, by definition, a document signed by the zoning officer acknowledging that a use, structure, building, or lot complies with or is legally nonconforming to the provisions of the zoning ordinance or is an authorized variance or special use. See G.L. § 45-24-31(65). The purpose for which a zoning certificate is given is to provide information concerning thepresent status of the existing use, structure, building or lot but not proposed uses, structures, buildings or other development. Taking G.L. §§ 45-24-31 (65) and 45-24-54 together, this Court concluded in Tompkins and Duncan, the zoning official has authority only to issue a zoning certificate confirming that "a use, structure, building or lot either complies with or is legally nonconforming to the provisions of the municipal zoning ordinance or is an authorized variance or modification therefrom." Tompkins at *11, (citing G.L. §45-24-31 (65)). Glaringly absent from this enabling language, the Court observed, is any reference to "proposed" uses or structures. Moreover, the operative verbs are all cast in the present tense; that is, the zoning official must determine whether the subject "complies with or is legally nonconforming" or whether it "is an authorized variance."[11] Therefore, although a zoning certificate may well serve as an indication or statement about how the zoning official views the use, structure, building or lot insofar as it complies with the Ordinance — information that no doubt would be useful to property owners and others — it does not operate to create any enforceable rights or to divest existing rights.[12]
Here, the Officer purported to confirm the legality of the Society's proposed use of a tent insofar as he advised that Historic District Commission approval was not required, and that the tent would not need an additional special use permit. Thus, this information was a zoning certification supplied togetherwith "other information," i.e., the lack of need for HDC approval. Section 45-24-54 authorizes such information in writing, for the purpose of providing guidance or clarification. However, this information, like the certification, is similarly non-binding. "Where the use, structure, building or other development is proposed, as opposed to existing, it is only through the submission of proper applications for necessary permits that a party can gain an enforceable approval of proposed plans."Tompkins at *14 (citing G.L. § 45-24-44, "General Provisions — Creation of Vested Rights"). Therefore, the zoning official or board's power to provide information allows them to give non-binding, informational assistance only.[13]
Again, as in Tompkins and Duncan, the issues presented to this Court by the parties are rendered moot. Instead, dispositive of this case is the fact that the non-binding effect of information supplied pursuant to G.L. §§ 45-24-31(65) and45-24-54 renders the contents of a zoning official's or zoning board's informational determination, generally, unappealable. General Laws §§ 45-24-63 and 64 limit a zoning board's authority to hear appeals from a decision of the local official or agency to those appeals brought by an aggrieved party only. Likewise, it is only an aggrieved party who may appeal a decision of a zoning board of review to the Superior Court and, where the individual claiming the appeal is not aggrieved of the zoning board's decision, this Court lacks the authority to hear the matter. G.L. 1956 § 45-24-69. See also Town of CoventryZoning Bd. of Review v. Omni Dev. Corp., 814 A.2d 889, 896-97 (R.I. 2003) (citing DeCesare v. Bd. of Elections, 104 R.I. 136, 147 n. 1, 242 A.2d 421, 426 n. 1 (1968) (Joslin, J. whom Kelleher, J. joins concurring in part and dissenting in part) (aggrievement is jurisdictional prerequisite to appeal)); 83 Am.Jur.2d Zoning and Planning, § 924 (statutes authorizing suit by person "aggrieved" are intended to broaden standing, for appeal, beyond parties of record); 59 Am.Jur.2d Parties §§ 34, 363 (standing is an aspect of subject matter jurisdiction). Thus, where the zoning official or board's action in issuing a certificate or providing information creates no vested rights under G.L. § 45-24-44, and is a non-binding and unenforceable determination creating no true controversy, there will usually be no party who is aggrieved — a prerequisite to the Board's authority to hear appeals pursuant to G.L. §§ 45-24-63 and 64 as well as to this Court's appellate jurisdiction under G.L. §45-24-69.
In Tompkins and in Duncan this Court noted that the conclusion that review is unavailable for determinations as to proposed plans made pursuant to a request that falls short of a substantially complete application for relief allowed pursuant to the provisions of a local zoning ordinance is confirmed by policy considerations, in light of settled principles of statutory construction. The framers of the Enabling Act contemplated, in G.L. § 45-24-44, that formal procedures would be established whereby, upon submission of a "substantially complete" application for development "submitted for approval to the appropriate review agency in the city or town," a party proposing development would gain vested rights to have the conformity of that development judged by existing ordinances. It would be an absurd construction to find, within the Enabling Statute, an alternative procedure whereby a party could gain the same rights by means of an informational request propounded to a zoning officer. Thus, any such alternative procedure could vest no rights, and a party wishing to act upon information obtained thereby would still be required to get binding approval through a formal application process. Clearly, the legislature did not intend the waste of resources that would result from redundant administrative or judicial review processes, as would be the case if review was available for the first, nonbinding decision.
Moreover, the availability of administrative or judicial review absent a formal application would encourage premature litigation — as this justice has observed to be occurring often. The requirement of a complete application for relief assures a sincere intent to develop, and thus a real case or controversy, and, in particular, discourages judicial involvement in local zoning matters when this involvement might ultimately become unnecessary as a result of an applicant's changed plans. SeePepperman v. Town of Rangeley, 659 A.2d 280 (Me. 1995) (where ordinance did not provide for appeal to the zoning board of an officer's violation determination, the board's unauthorized review of such determination was advisory in nature and not subject to judicial review). Furthermore, the doctrine of administrative finality suggests that judicial review should not be available when the same issue must reappear. See Marks v.Zoning Board of Review of City of Providence, 98 R.I. 405, 406,203 A.2d 761, 763 (R.I. 1964) ("persons affected by a decision in zoning matters ought not to be twice vexed for the same cause and are entitled to have their rights and liabilities settled by a single decision upon which reliance may be placed").[14]
In the instant case, the Society's request for information regarding The Breakers was appropriately treated as a request for information made pursuant to § 45-24-54 and its correlativeOrdinance provision, § 17.112.010.12. Thus, the Officer's response was within his statutorily delegated authority.[15] However, the non-binding nature of that response rendered it non-appealable by virtue of G.L. 1956 §§45-24-63 and 64 and the lack of an aggrieved party. Absent an application evincing a sincere intent to develop — and not merely a request for an opinion or for "guidance and clarification" — is a case ripe for review. See Rhode Island OphthalmologicalSociety v. Cannon, 113 R.I. 16, 28, 317 A.2d 124, 130-31 (1974) ("[a] case is ripe for review only when there is an allegation of an injury in fact and when the claims that are made are capable of proof at trial"). The requirement of ripeness is based on the principle that a court "will not render advisory opinions or function in the abstract." Palazzollo v. State, 746 A.2d 707, 713 (R.I. 2000) (quoting Cannon, 113 R.I. at 28, 317 A.2d at 130-31). Unless administrative and zoning board decisions result in cases that are ripe for judicial resolution before the court may conduct review, courts will become enmeshed in "abstract disagreements" concerning administrative policies. Id. (quotingAbbott Laboratories v. Gardner, 387 U.S. 136, 148-49,87 S.Ct. 1507, 1515, 18 L.Ed.2d 681, 691 (1967). And, because the Enabling Statute limits the Board's appellate authority to cases involving aggrieved parties, it is similarly barred from issuing advisory opinions. Cf. RICO Corp. v. Town of Exeter,787 A.2d 1136 (R.I. 2001); Franco v. Wheelock, 750 A.2d 957 (R.I. 2000).
Parties wishing to develop or alter their land may desire some preliminary indication of how the municipality would view their development concepts before expending time and money to create development plans; however, the only mechanism provided by the Legislature to accomplish this result is, as discussed herein, non-binding only. Therefore, a zoning certificate or other §45-24-45 informational determination, though not without value, is not sacrosanct; a party receiving such a determination must tread lightly.[16]
Because only a request for a zoning certificate was involved here, the Board could not entertain the appeal. Only if a zoning officer fails to respond to a written request for information within 15 days may the Board make any determination on the issues presented. G.L. § 45-24-54. Instead of declining NI's appeal, however, the Board exceeded its jurisdiction by purporting to issue a decision in a matter not involving an aggrieved party.
 The Society's Present Rights
Defendant Society has received non-binding information from the zoning officer that the museum use of The Breakers exists legally as a special use, and, furthermore, that neither a special permit nor HDC approval is required for the erection of a tent which is to be in place for seven consecutive months. The Society may choose to proceed in light of this opinion and apply for a building permit absent HDC approval.[17] If the Society does so choose, upon issuance of the permit — or denial for reasons relating to the zoning law — appropriate appeals may be taken to the zoning board pursuant to G.L. § 45-24-63 and Ordinance § 17.116.010.[18] Alternatively, Society may apply for such zoning relief as it deems warranted — along with any other required preliminary approval — prior to application for a building permit,[19] after which the appropriate appeals may, similarly, be taken.
 Conclusion
Because only a request for a zoning certificate was involved here, the Board could not entertain the appeal. Instead of declining NI's appeal, however, the Board's so-denominated decision prejudiced the substantial interests of that entity. Therefore, it must be reversed as being in excess of the authority granted to it by statute or ordinance, in error of law, and clearly erroneous in view if the reliable, probative, and substantial evidence of the record. G.L. § 45-24-69(d)(2).
[1] Evidence was presented to the Board that the tent, in 2001, did not cause traffic conditions in the neighborhood to worsen, but did have the public safety benefit of causing museum visitors to congregate in the tent rather than on sidewalks. See Letterfrom Newport Traffic Sgt. Lombardi to Guy Weston, Zoning Officer
(Dec. 3, 2001).
[2] Trudy Coxe, Chief Executive Officer of the Society testified that it had never been required to seek Historic District Commission or zoning approval for similar tents used for "special events." Coxe also testified that the tent erected in 2001 was operated pursuant to seven consecutive licenses. These licenses were required by Chapter 28.19 of the State Fire Safety Code, Title 23, Chapters 28.1-28.39. See In Re: Appeal of NI,Ltd. And The Bellevue/Ocher Point Neighborhood Ass., p. 132 (Jun. 31, 2002) ("Transcript"); See also Testimony of Guy Weston, Transcript, p. 86 (Apr. 22, 2002) (indicating that no building permit was required for tents, but that a Fire Safety license was obtained by Society). However, even this license did not extend to the structure supporting the tent.
[3] Section 17.108.020.C. provides that "[a]ny substantial revision of an approved special use permit application and any reconstruction, enlargement, extension, moving, or structural alteration of an approved special use permit or any building or structure in connection therewith shall require submission of a new special use permit application as for the original application."
[4] A zoning officer has the authority to issue a zoning certificate or provide other information pursuant to G.L. 1956 §45-24-54 and Ordinance § 17.112.010.12, upon written request. Here, the Officer treated Mr. Corcoran's letter on behalf of the Society as a request made pursuant to these provisions.
[5] Importantly, Mr. Weston conceded that the tent is properly characterized as a temporary structure, but that it has never been the practice of Newport to require HDC approval before such a tent is erected.
[6] Ordinance § 17.116.010 provides, in pertinent part, that "[a]n appeal to the zoning board of review may be taken by an aggrieved party from the decision of the zoning officer. . . ."
[7] Section 45-24-64 provides that "an aggrieved party" may appeal a decision of any zoning enforcement officer to the zoning board of review. It is this Enabling Legislation that authorizes the Ordinance's correlative § 17.116.010.
[8] These sections state that,
 "B. No nonconforming use of land shall be moved to another part of a lot or outside the lot, and no nonconforming use of a building shall be moved or extended to any other part of the building not expressly arranged and designed for such use at the time the use became nonconforming, and no building containing a nonconforming use shall be moved, unless the result of such move is to end the nonconformity. No nonconforming building shall be moved, unless the result of such moving is to reduce or eliminate its nonconformity.
 C. No nonconforming use of land, nonconforming use of a structure, or nonconforming structure shall be changed except to a conforming use or structure. No nonconforming structure, if once changed to conform, shall thereafter be changed so as to be nonconforming again."
[9] Ordinance § 17.108.020 provides that "[a]ny substantialrevision of an approved special use permit application and any reconstruction, enlargement, expansion, extension, moving or structural alteration of an approved special use permit or any building or structure in connection therewith shall require submission of a new special use permit application as for the original application." (Emphasis added). NI apparently ignores this provision, opting instead to rely on Warner v. Board ofReview of the City of Newport, 104 R.I. 207, 243 A.2d 92 (R.I. 1968), wherein the Supreme Court stated that
 "where [a] subsequent application seeks a use that does not partake of the character of the use granted by way of the prior exception, or if the use sought is of the same character as that granted by the prior exception, but a grant thereof would result in a substantial intensification of the prior use, the owner may not make such a use of the land as of right. Rather, he must proceed to obtain a special exception therefor in accordance with the provisions of the enabling act and the ordinance." Id. at 211, 243 A.2d at 95.
[10] While the list itself references the issuance of "certificates," and also includes acts that are not binding — the inspection of suspected violations, for example, clearly has no binding effect if no further action is taken — the important observation is that, had the Legislature intended the certificate to be binding, it would not have written a distinct provision for it. Additionally, it is also important to note that the certificates that the officer is charged with issuing, in the list, are "required certificates." (Emphasis added). The zoning certificate, however, is not required, but provided for the convenience of any requesting party. Thus, it is not within the scope of this other "certificate" provision of § 45-24-54.
[11] It is also noteworthy that a proposed use, structure, or lot could only "comply," but could neither be "legally nonconforming" nor an "authorized variance."
[12] Notably, if the Officer determines that a use, structure, building, or lot does not comply with the ordinance, is not
legally conforming, and is not an authorized variance, the appropriate response is not a zoning certificate, but merely "information as to the determination." § 45-24-54. Because the Legislature has stated that an adverse response is merely "information," an affirmative response — a zoning certificate — must also be merely "information." To conclude otherwise would lead to the absurd conclusion that an undesired, negative determination as to the land, which has a potentially adverse effect on a land owner (as, for example, where the certificate is requested for mortgage approval), is nonbinding "information," while a positive one is actually determinative of the land owner's rights and, thus, always appealable. However, a landowner would usually not be aggrieved of a positive response, while a neighbor, who might be, would have no notice of it. Seeinfra., n. 14. Thus, that a zoning certificate be more than information — whereas a denial of a certificate not be — could not have been intended by the Legislature.
Additionally, that a zoning certificate is defined as anacknowledgement of status, and not as a decision provides plain-language support for the conclusion that a zoning certificate is merely a means of providing information. It is clear that zoning certificate merely acknowledges an existing right. See G.L. § 45-24-31(65). But, if it were binding, it would empower the officer to create or change rights. For example, if a landowner requested a certificate stating that her use was permitted of right, but received a certificate wrongly acknowledging, instead, its legal nonconformance, the landowner would have to appeal — even if she would prefer to abandon any development plans — or be estopped from later challenging that determination. However, the Legislature clearly did not intend the zoning certification to have such an effect. Therefore, the zoning certificate cannot be interpreted as binding.
[13] Importantly, because G.L. § 45-24-54 allows a zoning board to render the certificate or other information upon the officer's failure to do so, construing those as binding would lead to the conclusion that a zoning board could, in the first instance, determine conclusively (subject to judicial review) the legality of an existing use. However, though the Enabling Act provides the convenience of an informational notice or advisement — whether from a zoning officer or, upon his failure, a zoning board — a zoning board is without jurisdiction to render a binding opinion as to the legality of an existing use, at least, that is, outside an appeal from an officer's determination made while enforcing
the laws. See Olean v. Zoning Bd. of Review of the Town ofLincoln, 101 R.I. 50, 52, 220 A.2d 177, 178 (R.I. 1966) (zoning board's jurisdiction is limited to "hear[ing] appeals from the determinations of administrative officers made in the enforcement of the zoning laws . . . and authoriz[ing] deviations from the comprehensive plan" by granting special exceptions and variances). Because G.L. § 45-24-54 provides for an "appeal" whereby the zoning board is authorized to issue a zoning certificate or other information — which speaks to the legality of an existing use — in the absence of an enforcement action, and, indeed, in the absence of any action of an administrative officer, to interpret the zoning certificate or other information as something other than an expedient designed to provide for the mere edification of the individual making the inquiry would contravene the Court's holding in Olean. See, also, RICOCorp. v. Town of Exeter, 787 A.2d 1136, 1144 (R.I. 2001) (re-affirming Olean); Franco v. Wheelock, 750 A.2d 957 (R.I. 2000) (affirming Superior Court decision that zoning board determination that certain parking restrictions applied to disputed lot was an advisory opinion — because no case or controversy existed — and stating that such "information" may be provided by board only upon zoning officer's failure to so provide within 15 days, as authorized by § 45-24-54). Rather, the appeal is more properly viewed as the Board acting qua zoning officer, to issue nonbinding advice, rather than as the delegation of jurisdiction which the Supreme Court has already determined to be absent.
At this point, it is worth mentioning G.L. § 45-24-66, which provides that the "zoning board of review shall fix a reasonable time for the hearing of the appeal, give public notice, as well as notice to the parties of interest, and decide the matter within a reasonable time." (Emphasis added). This section refers to "the appeal." Given the order of the Enabling Act's provisions, "the appeal" referred to is that provided for in G.L. §§ 45-24-63 and 64. Because these provisions contemplate prior decisions of the zoning officer, whereas § 45-24-54 refers to an initial determination by the board, the latter "appeal to the zoning board of review for the [zoning certification]" is conceptually different. (This distinction is highlighted by the fact that §§ 45-24-63 and 64 refer to appeals to the decisions
of an officer by aggrieved parties. Section 45-24-54, however, refers to a determination and an applicant who has not receivedany response, whether deemed a decision or determination). Thus, the extensive formalities required by § 45-24-66 and, also, § 45-24-61 (regarding decisions of the Board), are probably not applicable in the context of the zoning certification.
[14] Although the conclusion that there is no appeal to a §45-24-45 certification, or other provision of information, follows from the non-binding nature of the zoning officer's response, the lack of notice provisions in the Enabling Act also provides additional support for the reverse conclusion — i.e., that the determination is nonbinding. That is, if a zoning certificate were intended to be binding, one would expect a provision requiring that notice be given to neighbors, for example, in the event that a zoning certificate is provided. Given the absence of such mandatory notice, the time in which a zoning certificate could be appealed could be indefinite.Zeilstra v. Barrington Zoning Bd. of Review, 417 A.2d 303 (R.I. 1980) (time limitations for appeals do not begin to run until complainant is charged with knowledge of decision appealed to);See Almeida v. Zoning Board of Review of Tiverton,606 A.2d 1318, 1321 (R.I. 1992) (plaintiffs not entitled to rely on permit to build basement apartment where district was zoned only for single-family use) (town is not estopped by officer's improper or erroneous acts). This result is in contrast to the issuance of a building permit, for example, which contemplates immediate action which would put an abutting landowner on notice to search the public record. Such a possibly indefinite appeals time could not have been the intent of the Legislature. Thus, the conclusion that a zoning certification is unappealable is a logical construction which, in turn, supports the conclusion that the certificate is nonbinding.
[15] It is noted that, though the Society's letter only specifically requested the Officer's advice on whether the tent would intensify the museum use, the author (attorney Corcoran) was apparently relying upon previous advice given to him by the Officer that the museum existed pursuant to a special exception. Therefore, the Officer properly treated this reliance as a request for affirmation, and supplied the information again, this time in writing, as required by G.L. § 45-24-54 (if "no written response is provided within [15 days]" zoning board may make determination.")
[16] Because § 45-24-54 is clearly non-binding, an individual cannot rely upon it and thereby be immune from sanctions.
[17] Pursuant to G.L. 1956 § 23-27.3-113.1, of the State Building Code, a permit is required before a "building" may be constructed, enlarged, altered, removed, or demolish. Though that code does not define "building," the Zoning Enabling Act defines it as "any structure used or intended for supporting or sheltering any use or occupancy." G.L. § 45-24-31(10). In turn, a structure is any "combination of materials to form a construction for use, occupancy, or ornamentation, whether installed on, above, or below, the surface of land or water." G.L. §45-24-31(58). It is immaterial that a tent is a temporary structure, as evidenced either by intent or ease of removal.
Putting aside the definition found in the Zoning Enabling Act, the word "structure" does not ordinarily distinguish by temporariness. See, e.g., Black's Law Dictionary 1424 (6th ed. 1990) (defining "structure" as "[a]ny construction, or any production or piece of work artificially built up or composed of parts joined together in some definite manner . . . [a] combination of materials to form a construction for occupancy, use or ornamentation whether installed on, above, or below the surface of land"); American heritage Dictionary of theEnglish Language 1718 (4th ed. 2000) ("[s]omething made up of a number of parts that are held together in a particular way"). The word "`structure' . . . [is] . . . in ordinary use and has a well-defined meaning. If it was in contemplation that these words were used with other than their usual connotation such meaning should have been given." Campanella Corp. v. ZoningBd. of Review, 106 R.I. 495, 498, 261 A.2d 644 (R.I. 1970) (quoting Lescault v. Zoning Board of Review, 91 R.I. 277, 280,162 A.2d 807, 809 (R.I. 1960).
[18] G.L. § 45-24-63 provides that an aggrieved party may appeal a decision of any officer charged in the [zoning] ordinance with the enforcement of its provisions. In the instant case, Ordinance § 17.112.010.B.2 requires the zoning officer to review and approve building permits for zoning compliance.
[19] Given the disposition of this case, the Court does not reach the question of whether a special use permit is required. However, at least one reputed observer has stated that where uses originally permitted as of right, but now requiring approval, "fail to measure up to the standards now required, locational or otherwise, they may be just as nonconforming as if they were thereafter prohibited. It is suggested that until the location and manner of operation are measured against the present standards and approved by a permit approving agency, it should be considered a nonconforming use subject to the restrictions . . . provided for nonconforming uses." 4 Rathkopf, The Law of Zoningand Planning § 72:1 (2002). But see Clark v. Intern'lHorizons, Inc., 252 S.E.2d 488 (Ga. 1979).