July 29, 2025

**Supreme Court**

No. 2024-47-M.P.
(No. 22-1913)

Rhode Island Truck Center, LLC    :

v.                 :

Daimler Trucks North America, LLC.   :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Rhode Island Truck Center, LLC    :

v.                    :

Daimler Trucks North America, LLC.   :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Long, for the Court.**  This case comes before the Court pursuant to an order of the United States Court of Appeals for the First Circuit that certified the following question in accordance with Article I, Rule 6(a) of the Supreme Court Rules of Appellate Procedure:

> "Can a 'relevant market area' in Rhode Island General Laws section 31-5.1-4.2(a) extend beyond Rhode Island's borders?"

For the reasons set forth in this opinion, we answer the question in the affirmative— "relevant market area" as used in G.L. 1956 § 31-5.1-4.2(a) can extend beyond Rhode Island's borders because the statute's plain and unambiguous language does not limit its extraterritorial reach.

- 1 -

**Facts and Procedural History**

Because this case requires us to evaluate the text of § 31-5.1-4.2(a) and the statutory landscape in which that section appears, we begin our discussion with an overview of the statute. *See In re Request for Advisory Opinion from House of Representatives (Coastal Resource Management Council)*, 961 A.2d 930, 935 (R.I. 2008) ("Statutory construction begins with the plain text * * *.") (quoting *Raila v. United States*, 355 F.3d 118, 120 (2d Cir. 2004)); *see also Bartenwerfer v. Buckley*, 598 U.S. 69, 74 (2023) ("We start where we always do: with the text of the statute.") (brackets omitted) (quoting *Van Buren v. United States*, 593 U.S. 374, 381 (2021)).

The definition of "relevant market area" appears in chapter 5.1 of title 31 (the Dealer Law), which regulates business practices among motor vehicle manufacturers, distributors, and dealers. Chapter 5.1 of that title applies to "[a]ny person who engages directly or indirectly in purposeful contacts within this state in connection with the offering * * * for sale of * * * a motor vehicle within the state * * *." Section 31-5.1-2. The parties agree that the law applies to their businesses. *See Rhode Island Truck Center, LLC v. Daimler Trucks North America, LLC*, 642 F. Supp. 3d 218, 222 (D.R.I. 2022) (*RITC I*).

The purpose of the Dealer Law is to prevent unfair methods of competition and unfair or deceptive trade practices related to the sale of motor vehicles in Rhode Island primarily by regulating the conduct of manufacturers of new motor vehicles.

Sections 31-5.1-3(a), -4(b)-(d) (listing thirty-five unlawful acts in which a manufacturer alone is barred from engaging). To that end, the law requires that a manufacturer who seeks to establish a new motor vehicle dealership

> "within * * * a relevant market area where the same line or make is then represented * * * shall in writing by certified mail first notify the [Department of Revenue] and each new motor vehicle dealer in the same line or make in the relevant market area of the intention to establish an additional dealership * * * within or into that market area."
> Section 31-5.1-4.2(a).

The Dealer Law defines "relevant market area" as "the area within a radius of twenty (20) miles around an existing dealer or the area of responsibility defined in the franchise, whichever is greater." Section 31-5.1-1(13). For the purposes of the Dealer Law, the definition of "manufacturer" is any "resident or nonresident" partnership, firm, association, corporation, or trust "who manufactures or assembles new motor vehicles"—Daimler Trucks North America, LLC (DTNA) is a manufacturer. Section 31-5.1-1(8). And "dealer" is defined as "every person engaged in the business of buying, selling, or exchanging vehicles * * * and who has an established place of business for that purpose in this state"—Rhode Island Truck Center, LLC (RITC) is a dealer. Section 31-1-19(b). Finally, the law defines a "new motor vehicle dealer" as "any person engaged in the business of selling, offering to sell, soliciting, or advertising the sale of new motor vehicles and who holds * * * a valid sales and service agreement, franchise, or contract, granted by the

manufacturer * * * for the retail sale of that manufacturer's * * * new motor vehicles." Section 31-5.1-1(11).

When an existing dealer receives notice under § 31-5.1-4.2(a), it has thirty days to appeal the manufacturer's decision to the manufacturer directly, or by filing a protest with the Department of Revenue (the department). Section 31-5.1-4.2(a). If an appeal is filed with the department, the department is required to notify the manufacturer of the challenge, at which point the manufacturer "shall not establish or relocate the proposed new motor vehicle dealership" until the department holds a hearing, and issues a decision, on whether there is "good cause for not permitting the new motor vehicle dealership." *Id.*; *see* § 31-5.1-4.2(b)(1)-(12) (providing nonexhaustive list of factors the department must evaluate to find good cause).

Here, RITC alleges that DTNA violated § 31-5.1-4.2(a) when DTNA sought to establish a new motor vehicle dealership within RITC's relevant market area. DTNA had granted RITC a franchise to sell its Freightliner brand trucks in 2016. In the fall of 2019, DTNA granted another franchise to Advantage Truck Raynham, LLC (ATG Raynham) in Raynham, Massachusetts. Raynham, Massachusetts, is in Bristol County, Massachusetts, which is designated in RITC's franchise agreement as within its "Area of Responsibility" and is therefore within RITC's "relevant

- 4 -

market area" under the Dealer Law.[1]  The instant dispute began when RITC filed a protest challenging DTNA's attempt to grant ATG Raynham a franchise that would have authorized it to sell Freightliner trucks within RITC's relevant market area. RITC alleged that DTNA did not provide it with the statutory notice required under § 31-5.1-4.2(a) before attempting to grant ATG Raynham that franchise.

The "motor vehicle dealers license and hearing board" (Dealers' Hearing Board)—a board created under the Dealer Law to adjudicate disputes between manufacturers and dealers—determined, however, that it lacked jurisdiction over RITC's protest because it could not apply the Dealer Law outside of Rhode Island without violating the dormant Commerce Clause of the United States Constitution. *See* § 31-5-2.1 (creating Dealers' Hearing Board).  RITC filed an administrative appeal in the Superior Court which DTNA removed to the United States District Court for the District of Rhode Island; that court likewise concluded that, under the Commerce Clause of the United States Constitution, "no State may force an out-of-state merchant to seek regulatory approval in one State before undertaking a transaction in another." *RITC I*, 642 F. Supp. 3d at 223 (quoting *Healy v. Beer Institute*, 491 U.S. 324, 337 (1989)).  The United States Court of Appeals for the

---

[1] The parties revealed at oral argument that ATG Raynham is also located 18 miles from RITC's East Providence location and is, therefore, within 20 miles of RITC. *See* G.L. 1956 § 31-5.1-1(13) (defining "relevant market area" as the greater of a 20-mile radius from an existing dealer, or the defined area of responsibility within the franchise agreement).

- 5 -

First Circuit, however, bifurcated the District Court's analysis and certified a threshold question of statutory construction to this Court. *Rhode Island Truck Center, LLC v. Daimler Trucks North America, LLC*, 92 F.4th 330, 346-47, 353 (1st Cir. 2024) (*RITC II*). The First Circuit concluded that, before analyzing whether the Dealer Law violated the dormant Commerce Clause, this Court had to determine whether a "relevant market area," as used in the Dealer Law, could extend beyond Rhode Island's borders such that DTNA could be liable under the Dealer Law for violation of § 31-5.1-4.2(a)'s notice requirement when it attempted to grant ATG Raynham a franchise in Massachusetts. *Id.* at 353.

The First Circuit therefore certified the following question to this Court:

> "Can a 'relevant market area' in Rhode Island General Laws section 31-5.1-4.2(a) extend beyond Rhode Island's borders?" *RITC II*, 92 F.4th at 353.

**Discussion**

This Court reviews certified questions *de novo*. *Johnson v. Johnson*, 264 A.3d 835, 837 (R.I. 2021). We likewise apply a *de novo* standard of review to questions of statutory interpretation. *Id.* "[S]tatutory interpretation requires this Court 'to determine and effectuate the legislature's intent and to attribute to the enactment the meaning most consistent with its policies or obvious purposes.'" *Newport and New Road, LLC*, 296 A.3d 92, 95 (R.I. 2023) (quoting *Tiernan v. Magaziner*, 270 A.3d 25, 30 (R.I. 2022)). "[O]ur ultimate goal is to give effect to the purpose of the act

- 6 -

as intended by the Legislature." *D'Amico v. Johnston Partners*, 866 A.2d 1222, 1224 (R.I. 2005) (quoting *Webster v. Perrotta*, 774 A.2d 68, 75 (R.I. 2001)). If the language of a statute is clear and unambiguous, "it is given its plain and ordinary meaning." *Freepoint Solar LLC v. Richmond Zoning Board of Review*, 274 A.3d 1, 6 (R.I. 2022) (quoting *City of Woonsocket v. RISE Prep Mayoral Academy*, 251 A.3d 495, 500 (R.I. 2021)). "This is particularly true where the Legislature has not defined or qualified the words used within the statute." *D'Amico*, 866 A.2d at 1224 (quoting *Markham v. Allstate Insurance Co.*, 116 R.I. 152, 156, 352 A.2d 651, 654 (1976)). "It is an equally fundamental maxim of statutory construction that statutory language should not be viewed in isolation." *In re Brown*, 903 A.2d 147, 149 (R.I. 2006). "When performing [its] duty of statutory interpretation, this Court 'consider[s] the entire statute as a whole; individual sections must be considered in the context of the entire statutory scheme, not as if each section were independent of all other sections.'" *Id.* (quoting *Sorenson v. Colibri Corp.*, 650 A.2d 125, 128 (R.I. 1994)).

"It is only if the statutory language is ambiguous that we will turn to 'our well-established maxims of statutory construction in an effort to glean the intent of the Legislature.'" *Johnson*, 264 A.3d at 838 (quoting *In re B.H.*, 194 A.3d 260, 264 (R.I. 2018)). If a statute is ambiguous—that is, "susceptible of more than one

construction"—the Court will "adopt the construction that comports with constitutional imperatives." *In re Kyle S.*, 692 A.2d 329, 334 (R.I. 1997).

In our holistic reading of the Dealer Law, bearing in mind both its plain language and overriding purpose, it is our view that the law is unambiguous. As a result, we answer the certified question in the affirmative: a relevant market area can extend outside Rhode Island's borders under the plain meaning of the statute. A relevant market area is equal to a radius of 20 miles, or the distance provided for under the franchise agreement, whichever is greater, without regard to state borders. Section 31-5.1-1(13). The legislature's definition of "relevant market area" includes two limits to the size of the area: first, a radius of 20 miles and, second, "the area of responsibility defined in the franchise agreement," followed by the modifier "whichever is *greater*." *See id.* (emphasis added). These limits make no reference to the state's borders. Their broad sweep establishes the legislature's intent to provide dealers with a minimum area of protection against manufacturer competition that could be expanded through the agreement of the parties—even if that expansion pushed the boundaries of a dealer's "relevant market area" outside the state. We do not find that any phrase within the definition of "relevant market area" is unclear or ambiguous, and the words are therefore entitled to their plain and ordinary meaning. *Freepoint Solar LLC*, 274 A.3d at 6. In order to give those words their plain and

ordinary meaning, a "relevant market area" must be able to extend outside the state's borders.

In interpreting the statute, we presume that the legislature intended every word to serve some purpose and have some force and effect. *Lehigh Cement Co. v. Quinn*, 173 A.3d 1272, 1276 (R.I. 2017). We take judicial notice of the fact that the State of Rhode Island is only 37 miles wide. *See Colonial Plumbing & Heating Supply Co. v. Contemporary Construction Co., Inc.*, 464 A.2d 741, 742 (R.I. 1983) (noting that a court may take judicial notice of "facts capable of accurate and ready determination by resort to sources of indisputable accuracy"). Given the state's size, a circle with a radius of 20 miles will always encompass an area outside the state. In order to give the legislature's inclusion of the "20-mile radius" force and effect, and given the readily observable facts about the size of this state, we conclude that a "relevant market area" was intended to encompass out-of-state areas if that area is within 20 miles of an existing dealer. This reading is the only way to implement the intent of the legislature—which, presumably, was aware of the size of this state, and included the "20-mile radius" language in the definition of "relevant market area."

Moreover, if we were to read the statute not to apply outside the state, the modifier "whichever is greater," which appears at the end of the statutory definition of "relevant market area," would become mere surplusage. *See Rhode Island Department of Mental Health, Retardation and Hospitals v. R.B.*, 549 A.2d 1028,

1030 (R.I. 1988) (explaining that this Court gives effect to all of a statute's provisions without construing the statute to create surplus sentences, clauses, or words). Under an in-state-only interpretation, the phrase "whichever is greater" would be meaningless as to any area outside the state, because the only relevant calculation for the purposes of determining a "relevant market area" would be the 20-mile radius, which would always stop wherever that radius intersected with a state border. Because under that reading the protective circle created by the statute could never be "greater" than the state's borders, it would hamper the legislature's intention of allowing parties to expand that radius through their duly negotiated franchise agreements, and thereby render the phrase surplusage. *See id.*

Our holding also gives equal force to the contractual carve-out in the definition of "relevant market area." The statute provides that a "relevant market area" is the greater of 20 miles, *or the area defined in the party's franchise agreement. See* § 31-5.1-1(13) (emphasis added). This provision clearly contemplates the exact scenario present in this case where a manufacturer and dealer agree to an area of responsibility in excess of 20 miles, which includes out-of-state areas. It would be illogical for § 31-5.1-4.2(a) to be inapplicable to such a scenario simply because the franchise agreement includes out-of-state areas where the legislature provided that a "relevant market area" is equal to the "greater" of a 20-mile radius *or* whatever is contracted for in the party's franchise agreement. *See*

*Newport and New Road, LLC*, 296 A.3d at 96. Therefore, the protections of the statute must extend to franchise agreements encompassing extraterritorial counties or states. If we were to interpret the statute to apply only within the state, then it would eliminate the protection the law plainly affords for parties who freely negotiate and enter contracts specifically allowing for an area of responsibility that includes an area outside the state.

Our reading is further confirmed when we look to the statute as a whole. In other sections of the Dealer Law, the legislature clearly articulated when it intended for definitions and sections to apply only to in-state actors. For example, the definition of "established place of business" applies only to locations "within this state," § 31-5.1-1(3); and the definition of "dealer"—but not the definition of "new motor vehicle dealer"—is restricted to businesses "in this state." *Compare* § 31-1-19(b) (dealer), *with* § 31-5.1-1(11) (new motor vehicle dealer). Given the legislature's use of geographically limited language in certain definitions, its absence from the statutory definitions of "relevant market area" evinces a legislative intent to give those provisions their plain meaning irrespective of the confines of state borders.

Nevertheless, DTNA argues that the statute's silence with regard to its extraterritorial reach evinces a legislative intent that the law applies only within the state. DTNA points to the definitions of "manufacturers" and "distributors" (which

are both defined to include "residents *and nonresidents*") to argue that "the legislature is capable of providing direction concerning extraterritorial scope" when it intends for a law to apply outside the state; and therefore the absence of similar language in the definition of "relevant market area" is a "purposeful omission" that was intended to limit the statute's reach. However, we cannot elevate the absence of language in the definition of "relevant market area" to "the level of interpretive trump card" where, as here, the plain language and purpose of the rest of the Dealer Law plainly establishes its extraterritorial intent. *Field v. Mans*, 516 U.S. 59, 67 (1995) (finding that statutory silence alone does not require a negative inference where other evidence supports a contrary interpretation). DTNA's focus on the language that is *not* included in the definition of "relevant market area" downplays the impact of the language that *is* included in the statute, namely, the 20-mile-radius provision in the "relevant market area" definition that we have determined must be interpreted to include areas outside the state. Moreover, DTNA argues that this Court must give the statute an in-state-only interpretation because failing to do so would violate the United States Constitution. Critically, however, the certified question before us, and the method by which the First Circuit has disaggregated the analysis in this case, do not require us to opine on the constitutionality of our interpretation so long as we determine that the statute is unambiguous—which we do. *See Berkshire Cablevision of Rhode Island, Inc. v. Burke*, 488 A.2d 676, 679

(R.I. 1985) (answering certified question of state law but leaving for the First Circuit remaining questions under Federal Constitution); *RITC II*, 92 F.4th at 346-47 (disaggregating question regarding state statute from constitutional question); *In re Kyle S.*, 692 A.2d at 334 (requiring assessment of statute's constitutionality when the statute is found to be ambiguous).

DTNA further argues that an extraterritorial application of the statute's plain language would lead to an absurd result because a dealer whose area of responsibility under a franchise agreement includes all of New England would be entitled to notice for the creation of a new motor vehicle dealer hundreds of miles away. This argument also fails because it would hardly be an absurd result for the terms of an agreement between two sophisticated entities to be given effect as written. *See Sturbridge Home Builders, Inc. v. Downing Seaport, Inc.*, 890 A.2d 58, 66 n.5 (R.I. 2005) (discussing a court's obligation to enforce unambiguous contract terms). Indeed, were we to assume that this hypothetical were properly before us (though it is not) this Court would enforce that agreement as-written both because the parties would be bound to the terms of their contract and because the definition of relevant market area instructs that that area is equal to the greater of 20 miles, or whatever the parties agree to in their contract. *Id.*; § 31-5.1-1(13).

Finally, DTNA argued, for the first time at oral argument, that the Dealer Law is ambiguous because, if this Court gave the definition of "relevant market area" an

extraterritorial construction, that would create ambiguity elsewhere in the Dealer Law. This argument also fails. First, assuming for the sake of argument that DTNA is correct, they have not provided any reason why the statutory provision identified by the First Circuit for this Court's review—the definition of "relevant market area" as used in § 31-5.1-4.2(a)—is ambiguous. Although DTNA argues that other portions of the law would become ambiguous if we were to give "relevant market area" an extraterritorial reading, it has not identified how the words in the subsection before us are susceptible of more than one reasonable meaning. *Drs. Pass and Bertherman, Inc. v. Neighborhood Health Plan of Rhode Island*, 31 A.3d 1263, 1269 (R.I. 2011). DTNA cannot create ambiguity as to that language by pointing out potential ambiguity elsewhere in the statute. *See id.* Second, DTNA argues that an extraterritorial construction of the phrase "relevant market area" as used in § 31-5.1-4.2(a) would create ambiguity with respect to the "good cause" factors contained in § 31-5.1-4.2(b) because the Dealers' Hearing Board would be obligated to assess out-of-state conditions in determining whether a manufacturer may establish a new motor vehicle dealership. However, critically, § 31-5.1-4.2(b) is not before this Court for our review, *see RITC II*, 92 F.4th at 353; and, even if it were, we see no reason why the statute becomes ambiguous if the Dealers' Hearing Board is entitled to weigh factors that take into account certain realities outside of Rhode Island. As part of our modern nationwide economy, it is not uncommon that

- 14 -

legislation and regulation require state agencies to consider the out-of-state effect of in-state conduct; facing that reality does not create statutory ambiguity. *See National Pork Producers Council v. Ross*, 598 U.S. 356, 374-75 (2023).

In the end, DTNA has not presented a sound basis for this Court to rule that the statute is ambiguous, and in our review of the statutory language we see none. Therefore, our work is simple; we must give the words of the statute their "plain and ordinary meaning." *Freepoint Solar LLC*, 274 A.3d at 6. In doing so, we conclude that the definition of "relevant market area" contained in § 31-5.1-1(13), and as used in § 31-5.1-4.2(a), can extend beyond Rhode Island's borders.

## Conclusion

For the reasons stated herein, we answer the certified question in the affirmative. The papers in this case may be remanded to the United States Court of Appeals for the First Circuit for further proceedings.

# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI 02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Rhode Island Truck Center, LLC v. Daimler Trucks North America, LLC. |
| **Case Number** | No. 2024-47-M.P.<br>(No. 22-1913) |
| **Date Opinion Filed** | July 29, 2025 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Melissa A. Long |
| **Source of Appeal** | Certified Question by the United States Court of Appeals For the First Circuit in accordance with Article I, Rule 6 of the Supreme Court Rules of Appellate Procedure |
| **Judicial Officer from Lower Court** | Judges David J. Barron, Jeffrey R. Howard and Gustavo A. Gelpi of the United States Court of Appeals For the First Circuit |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Edward J. Sackman, Esq. |
| | For Defendant:<br><br>Nathan D. Imfeld, Esq. |